# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

LMD Holdings, LLC, *et ano*.,[1]

Debtors.

Case No. 25-47214
Chapter 11
Hon. Paul R. Hage

(Jointly Administered)

## DEBTORS' MOTION FOR ENTRY OF (A) ORDER (I) ESTABLISHING BIDDING PROCEDURES, (II) SCHEDULING AN AUCTION AND A SALE HEARING IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (III) SETTING CERTAIN DATES AND DEADLINES IN CONNECTION THEREWITH, (IV) APPROVING THE FORM OF THE ASSET PURCHASE AGREEMENT, INCLUDING THE STALKING HORSE BID PROTECTIONS, AND (V) GRANTING RELATED RELIEF; (B) ORDER (I) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; AND (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) <u>CERTAIN RELATED RELIEF</u>

LMD Holdings, LLC ("<u>Holdings</u>") and LMD Distillery, LLC ("Distillery" and collectively with Holdings, the "<u>Debtors</u>"), by and through their undersigned counsel, hereby submits this motion (the "<u>Motion</u>") pursuant to, *inter alia*, sections 105, 363, 365, and 503 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "<u>Bankruptcy Code</u>"), and Rules 2002, 4001, 6004, 6006, 9006,

---

[1] The Debtors in these jointly administered proceedings are LMD Holdings, LLC (Case No. 25-47214) and Luca Mariano Distillery, LLC (Case No. 25-51472).

9007, and 9014 of the Federal Rules of Bankruptcy Procedure (each a "Bankruptcy Rule," and, collectively, the "Bankruptcy Rules") and Rules 6004-1 and 9014-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Michigan (each a "Local Rule," and, collectively, the "Local Rules"), for the entry of (A) an order (the "Bidding Procedures Order"), substantially in the form attached hereto as **Exhibit 1**, (I) approving the Debtors' proposed auction and bidding procedures (the "Bidding Procedures"), in substantially the form attached as an exhibit to the Bidding Procedures Order, to be employed in connection with the proposed sale (the "Sale") of substantially all of the Debtors' assets (collectively, the "Assets"); (II) approving the form of an asset purchase agreement (including all exhibits, schedules, and ancillary agreements related thereto, and as may be amended and in effect, the "APA"); (III) establishing procedures for the assumption and assignment of executory contracts and unexpired leases; (IV) approving the form and manner of notice of the Sale, the notice of assumption and assignment of executory contracts and unexpired leases, including the form and manner of notice of proposed cure amounts (the "Cure Notice"), and the other notices set forth herein; and (V) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to consider approval of the Sale; and (B) an order (the "Sale Order") authorizing (I) the Sale of the Assets to the bidder with the highest or otherwise best bid (the "Successful Bidder" or "Buyer") pursuant to the APA free and clear of all liens,

claims, encumbrances and interests (other than Permitted Encumbrances and Assumed Liabilities), including rights or claims based on any successor or transferee liability; as provided therein; and (II) the Debtors' assumption and assignment of the applicable executory contracts and/or unexpired leases to the Successful Bidder; and (C) certain related relief.[2]   In support of the Motion, the Debtors respectfully state as follows:

### Preliminary Statement

1.      It is necessary that the Debtors pursue a sale of their assets in order to maximize a recovery for their bankruptcy estates. Through this Sale Motion, the Debtors seek the approval of Bidding Procedures (defined below) to be followed in connection with a sale or sales (the "Sale") of substantially all of Debtors' assets used in the Debtors' business (the "Assets"), which Sale(s) will be subject to Debtors' receipt of higher or better offers.

2.      Debtors have determined that a going-concern Sale(s) of the Assets is in the best interests of Debtors' estates because it will allow Debtors to best maximize the value of their Assets.

### Jurisdiction and Venue

3.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the APA.

3

157 and 1334.

4. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

5. Venue of this proceeding and this Motion is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicates for the relief sought herein include sections 105, 363, 365, and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, 9007, and 9014 and Local Rules 6004-1 and 9014-1.

## **Background**

7. On July 17, 2025, Holdings filed a voluntary petition for relief in this Court under chapter 11 of Title 11 of the Bankruptcy Code.

8. On November 12, 2025, Distillery filed a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.

9. The Debtors continue in possession of their property and have continued to operate their businesses as Debtors-in-Possession pursuant to §§ 1107 (a) and 1108 of the Bankruptcy Code.

10. No trustee, examiner, or official committee of unsecured creditors has been appointed in either of the Debtors' chapter 11 cases.

11. Detailed facts about Debtors and these chapter 11 cases are set forth in the *Declaration of David Baker, CTP in Support of First Day Pleadings*, which is incorporated into this Motion by reference.

4

12. The Sale of the Assets is intended to maximize the recovery to the bankruptcy estates, relieve the estate of substantial obligations relating to such assets, reduce the estate's liabilities through the assumption and assignment of the relevant executory contracts and/or unexpired leases, and avoid the further deterioration in the value of the Assets.

13. The Debtors and their professionals have been and will continue exposing the Assets to competitive bidding through a marketing and auction process pursuant to the Bidding Procedures. Indeed, prior to the Petition Date, the Debtors' sole member had engaged in sale discussions with numerous parties. Since appointment as Chief Restructuring Officer, David Baker and Aurora Management Partners (the "CRO") has engaged in discussions with strategic and financial buyers for the Sale.

14. The CRO has met with potential purchasers, toured the Debtors' facilities, contacted strategic buyers (industry related) and financial buyers (private individuals and private equity firms) who may have an interest in acquiring the Assets, prepared marketing materials and an electronic data room which will be provided to all Potential Bidders (as defined below), as such term is defined in the Bidding Procedures.

15. The Debtors believe that they have fostered an environment that encourages a robust sale and auction process. Moreover, the Debtors believe, in

consultation with the CRO and their respective counsel, that pursuing the Sale as contemplated in the Bidding Procedures, including a Sale to a Stalking Horse Bidder (subject to higher and better offers), is a course of action that will to maximize the value of the Assets, while ensuring that a consummation of a Sale will occur if no other bids are received. As a result, and in an exercise of the fiduciary obligation to maximize the recoverable value of their estates, the Debtors have prepared the APA and seek authority of this Court to engage in the Sale process contemplated by this Motion.

16. Pursuant to this Motion, the Debtors request that this Court enter the proposed Bidding Procedures Order, which, *inter alia,* approves the Bidding Procedures, the Bid Protections (as defined below), the Assumption and Assignment Procedures (as defined below), and the various notices set forth herein. In addition, the Bidding Procedures set forth the timetable for conducting the Auction, holding a Sale Hearing and consummation of the Sale. Upon conclusion of the Auction and selection of the highest or otherwise best bid, the Debtors will request that this Court enter the proposed Sale Order authorizing the Sale. At the Sale Hearing, the Debtors will also seek approval, pursuant to section 365 of the Bankruptcy Code, of the assumption and assignment of the relevant executory contracts and/or unexpired leases to the Successful Bidder for the applicable Assets.

6

## DESCRIPTION OF BIDDING PROCEDURES

17. Debtors propose to offer the Assets for sale as a whole or in segments with Debtors' businesses being sold as a going concern.

18. Any Qualified Bidder may bid on some or all of the Assets.

19. Pursuant to the Bidding Procedures, the Debtors seek the ability to select a stalking horse to serve as a committed buyer of some or all of the Assets (the "Stalking Horse Bidder") and enter into a Stalking Horse Asset Purchase Agreement (the "Stalking Horse APA"), and (b) in connection with any Stalking Horse APA with a Stalking Horse Bidder, provide Bid Protections to the extent the Debtors determine that provision of such Bid Protections would be an actual and necessary cost of preserving the value of the Debtors' estates.

20. If a Stalking Horse Bid (defined below) is received and no Qualified Bid other than the Stalking Horse Bid is received with respect to any Assets, Debtors will request that this Court approve the Stalking Horse Bid. The Bidding Procedures contemplate an auction process whereby only bidders who submit a Qualified Bid are eligible to participate.

21. If practicable, the bid submitted by the Stalking Horse Bidder will establish a baseline bid for the Assets, which bid Debtors will use to solicit Qualified Bids (as defined below) from other bidders. The highest or otherwise best Qualified Bid submitted before the Auction will serve as the opening bid at the Auction.

22.     Pursuant to the Bidding Procedures, the Debtors will solicit the highest or otherwise best bids according to the following proposed timeline, which complies with the milestones in the DIP Facility, as modified by the parties, while also providing adequate and appropriate notice to parties in interest and to potential purchasers:

| EVENT | DATE |
|---|---|
| Deadline to file Cure Notice | **Three (3) business days after entry of the Bidding Procedures Order or as soon as practicable thereafter** |
| Deadline to objection to Cure Notice | **January 23, 2026** |
| Stalking Horse Selection Date | **January 30, 2026** |
| Deadline to file Stalking Horse Notice | **February 3, 2026** |
| Bid Deadline | **February 20, 2026 at 4:00 PM ET** |
| Auction to be held if Debtors receive more than one Qualified Bid | **February 25, 2026 at 10:00 AM ET** |
| Deadline to file objections to Sale and Successful Bidder's Adequate Assurance of Future Performance | **February 26, 2026** |
| Sale Hearing | **March 3, 2026** |
| Outside Closing Date | **March 18, 2026** |

**I.      The Proposed Sale of the Assets**

**a.      The APA**

8

23. The following is a summary of the principal terms of the APA:[3]

    a. <u>Purchase Price:</u> The aggregate consideration for the Purchased Assets is defined as the "Purchase Price" in section 3.1(a).

    b. <u>Assets:</u> Section 2.1(a) of the APA provides that the Buyer shall purchase substantially all of the Debtors' assets, other than the Excluded Assets.

    c. <u>Excluded Assets:</u> Section 2.2 of the APA provides that the Debtors shall retain and the Buyer will not acquire any right, title, or interest in certain assets as set forth therein.

    d. <u>Assumed Liabilities:</u> Section 2.1(b) of the APA provides that the Buyer will assume and perform and discharge in accordance with their respective terms, among others, Liabilities in respect of any Assumed Contracts.

    e. <u>Termination.</u> Article 9 of the APA provides for the termination of the APA according to the terms therein.

    f. <u>Bid Protections:</u> Pursuant to Section 11.2 of the APA, and subject to the approval of the Bankruptcy Court of the Bidding Procedures Order, and if (i) Buyer has been identified by Sellers as the Stalking Horse Bidder by the Stalking Horse Selection Date; (ii) Sellers consummate a Third Party Sale, within 30 days after the date of the APA, singly or in aggregate for an amount equal to or in excess of the amount of the Stalking Horse Bid, plus the Bid Protections, plus the Bidding Increment, (iii) the APA has not been terminated in accordance with its terms at the time of the consummation of the Third Party Sale, (iv) Buyer has waived all conditions to Closing and is ready, willing, and able to consummate the Closing, and (v) at the time of the

---

[3] The following summary is qualified in its entirety by reference to the provisions of the APA. In the event of any inconsistencies between the provisions of the APA and the terms herein, the terms of the APA shall govern. Capitalized terms used in this Section that are not otherwise defined in this Motion shall have the meanings assigned to such terms in the APA.

consummation of the Third Party Sale, Buyer is not then in material breach of any provision of this Agreement, then Buyer will be entitled to receive, without further order of the Bankruptcy Court, from the proceeds of the consummated Third Party Sale, an amount in cash equal to no more than $100,000 of actual and documented expenses incurred, including legal and professional fees (the "Bid Protections").

g.  Closing Conditions.  Pursuant to Article 6 of the APA, in addition to customary closing conditions, including Court approval, the obligation of the Buyer to consummate the transactions contemplated by the APA is subject to the satisfaction of closing conditions more fully set forth in the APA.

**b.  Bidding Procedures**

24.  While all interested bidders should read the Bidding Procedures in their entirety, the following describes the salient points of the Bidding Procedures:[4]

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| **Modification of Bidding Procedures** | **THE DEBTORS MAY AMEND THE BIDDING PROCEDURES OR THE BIDDING PROCESS AT ANY TIME, AND FROM TIME TO TIME, IN ANY MANNER THAT THEY DETERMINE IN GOOD FAITH WILL BEST PROMOTE THE GOALS THEREOF, INCLUDING EXTENDING OR MODIFYING ANY OF THE DATES DESCRIBED THEREIN OR THE INFORMATION AND MATERIAL REQUIRED FROM QUALIFIED BIDDERS;** |

---

[4] The following summary is qualified in its entirety by reference to the provisions of the Bidding Procedures. In the event of any inconsistencies between the provisions of the Bidding Procedures and the terms herein, the terms of the Bidding Procedures shall govern. Unless otherwise defined in the summary set forth in the accompanying text or elsewhere in this Motion, capitalized terms shall have the meanings ascribed to them in the Bidding Procedures.

10

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| | **PROVIDED THAT SUCH MODIFICATIONS ARE CONSISTENT WITH THE INTERIM DIP ORDER AND THE FINAL DIP ORDER.** |
| **Participation Requirements** | The Bidding Procedures detail certain requirements to participate in the bidding process, including, among other things, the execution of a confidentiality agreement. Each party meeting these requirements, set forth in full in the Bidding Procedures, has been or will be deemed a "Potential Bidder." The Debtors have provided or will provide all such Potential Bidders access to a Data Room (as defined below) as well as an electronic copy of any Stalking Horse APA. |
| **Due Diligence** | The Debtors have established a confidential electronic data room (the "Data Room") containing due diligence materials relating to the Assets. Until the Bid Deadline, in addition to access to the Data Room, the Debtors may provide any potential bidder such due diligence access or additional information that may be requested, as the Debtors determine to be reasonable and appropriate in the circumstances. A potential bidder's access to additional due diligence will cease if (a) the potential bidder does not become a Qualified Bidder by the Bid Deadline (as defined below); or (b) after consultation with the Consultation Parties, the bidding process is terminated.<br><br>The "Consultation Parties" means SummitBridge National Investments VIII LLC ("Summit Bridge"), Farm Credit Leasing Services Corporation, Farm Credit Mid-America and any statutory committee appointed in these cases; provided, however, that to the extent any of the foregoing parties submit a Bid (including a Credit Bid that is either revocable or subject to amendment) for any Assets, they shall not be a |

11

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| | Consultation Party with respect to the evaluation and qualification of competing bids for the Assets included in such party's bid, or with respect to seeking and/or obtaining information about other bids, but shall remain a Consultation Party for other purposes as set forth in the Bidding Procedures and the Bidding Procedures Order. |
| **Stalking Horse Designation and Stalking Horse Deadline** | The Debtors shall have until January 30, 2026 (the "Stalking Horse Selection Date") to designate any Potential Bidders as a Stalking Horse Bidder and enter into a Stalking Horse APA. Promptly after entering into any Stalking Horse APA, the Debtors shall file and serve the Stalking Horse Notice (as defined below). Upon and after the designation of a Stalking Horse Bidder, the Debtors will continue soliciting interest from and assisting Potential Bidders in all regards related to the Sale. |
| **Stalking Horse Protections** | In the Debtors' discretion, a Stalking Horse APA may include Bid Protections, as set forth in more detail herein. |
| **Bid Deadline** | February 20, 2026 at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline"). |
| **Bid Requirements** | <ul><li>Better Terms: In connection with any Bid for the Assets, such Bid must be on terms that the Debtors, after consulting with the Consultation Parties, determine are substantially similar to or better than the terms and conditions contained in the APA or, if a Stalking Horse Bid has been secured, the Stalking Horse APA.</li><li>Executed Agreement: Each Bid must be based on the APA, and must include binding, executed transaction documents, signed by an authorized representative of such Bidder,</li></ul> |

12

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| | pursuant to which the Bidder proposes to effectuate a transaction. A Bid must also include a copy of the counter APA (including all exhibits thereto) marked against the APA, to show all changes requested by the Bidder (including those related to purchase price and to remove any provisions that apply only to the Buyer, such as the Bid Protections contained in the APA.<br><br>• Scope of Bid: A Bid must be for all or substantially all of the Assets.<br><br>• Designation of Assigned Contracts and Leases: A Bid must identify the executory contracts and unexpired leases with respect to which the Bidder seeks assignment from the Debtors. Each Bid must be accompanied by evidence of the applicable Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of future performance under all Assigned Contracts, which shall include the proposed assignee and any guarantors, as applicable.<br><br>• Designation of Assumed Liabilities: A Bid must identify all liabilities which the Bidder proposes to assume.<br><br>• Corporate Authority: A Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed transaction, as applicable; provided that, if the Bidder is an entity specially formed for the purpose of effectuating the transaction, then the Bidder must furnish written evidence reasonably acceptable to |

13

| Provision | Summary Description |
|---|---|
| | the Debtors and Summit Bridge of the approval of the transaction, as applicable, by the ultimate equity holder(s) of such Bidder.<br><br>• Disclosure of Identity of Bidder: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets, including any ultimate equity holders in the case of a Bidder which is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid. A Bid must also fully disclose any connections or agreements with the Debtors, the sole member of the Debtors, the Buyer or any other known, potential, prospective Bidder or Qualified Bidder, and/or any officer, director, or equity security holder of the Debtors.<br><br>• Proof of Financial Ability to Perform: A Bid must include written evidence that the Debtors and SummitBridge may conclude demonstrates that the Bidder has the necessary financial ability to close the transaction, as applicable, and comply with section 365 of the Bankruptcy Code, including providing adequate assurance of future performance under all contracts to be assumed and assigned in such transaction. Such information must include, inter alia, the following:<br><br>    o contact names and numbers for |

14

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| | verification of non-contingent financing sources; |
| | o evidence of the Bidder's internal resources and proof of unconditional debt funding commitments from a recognized banking institution and, if applicable, unconditional equity commitments in an aggregate amount equal to the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of the cash portion of such Bid, in each case, as are needed to close such transaction; and |
| | o any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors and SummitBridge demonstrating that such Bidder has the ability to close the transaction. |
| | • Regulatory and Third Party Approvals: A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the transaction, and the time period within which the Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the counter APA, those actions the Bidder will take to ensure receipt of such approval(s) as |

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| | promptly as possible). |
| | • Contact Information and Affiliates: A Bid must provide the identity and contact information for the Bidder. |
| | • Contingencies: Each Bid (i) may not contain representations and warranties, covenants, or termination rights materially more onerous in the aggregate to the Debtors than those set forth in the APA, as determined by the Debtors after consultation with the Consultation Parties, and (ii) may not be conditioned on obtaining financing, any internal approvals or credit committee approvals, or on the outcome or review of due diligence, including with respect to any Environmental Laws, or employee, labor, health and/or safety matters. |
| | • Irrevocable: Each Bid must be irrevocable until five (5) business days after the Sale Hearing; provided that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable until the closing of the Sale. |
| | • Compliance with Diligence Requests: The Bidder submitting the Bid must have complied with all requests for additional information and due diligence access from the Debtors to the reasonable satisfaction of the Debtors, in consultation with the Consultation Parties. |
| | • Nondisclosure Agreement: To the extent not already executed, the Bid must include an executed NDA in substantially the form |

16

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| | attached as Exhibit 4 to the Motion.<br><br>• Termination Fees: The Bid (other than the Stalking Horse Bid pursuant to the Stalking Horse APA) must not entitle the Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and, by submitting the Bid, the Bidder waives the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or participation in any Auction. |
| **Good Faith Deposit** | Each Bid must be accompanied by a cash deposit in the amount of ten percent (10%) of the purchase price (excluding any Assumed Liabilities) contained in the APA, which deposit shall be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Good Faith Deposit"). *provided*, *however*, that the Debtors, in their business judgment and in consultation with the Consultation Parties, may elect to waive or modify the requirement of a Good Faith Deposit on a case-by-case basis. Each credit bid must also be accompanied by the Good Faith Deposit to the extent of any cash component of such credit bid, subject to the waiver or modification described in the previous sentence. |
| **Determination of Qualified Bids** | The Debtors, in their discretion and after consultation with the Consultation Parties, will determine whether any bids received from a potential bidder for the Assets constitutes a Qualified Bid and whether a potential bidder that submits such a bid will be considered a Qualified Bidder. |
| **Considerations in** | The Bidding Procedures detail certain bid |

17

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| **Comparing and Valuing Bids** | information to be considered in comparing the value of proposed bids. These considerations, fully detailed in the Bidding Procedures, will aid the Debtors in determining whether the terms of a particular bid for the Assets are materially more burdensome or conditional than the terms of another bid. These considerations are aimed at uncovering the bid that is highest and/or best based on the Debtors' unique circumstances. |
| **Auction** | If the Debtors receive at least two Qualified Bids (including any Stalking Horse Bid) for the Assets, the Debtors will conduct an Auction. |
| **Time, Place and Conduct of an Auction** | If necessary, the Debtors will conduct the Auction in a manner as may be designated by the Debtors including, but not limited to, holding the Auction through remote video conference or at the offices of counsel to the Debtors Stevenson & Bullock, PLC, 26100 American Drive, Suite 500, Southfield, MI 48034, at **10:00 a.m. (prevailing Eastern Time) on February 25, 2026,** or such other time as the Debtors, after consultation with the Consultation Parties, may determine. If only one Qualified Bid (including any Stalking Horse Bid) for the Assets is received, the Auction for the Assets will be cancelled and the Qualified Bid received will be designated the Successful Bid (as defined below) for the Assets. |
| **Baseline Bids** | If more than one Qualified Bid (including any Stalking Horse Bid) is received and thus an Auction is necessary, the Debtors, after consultation with the Consultation Parties, will select what they determine to be the highest and/or best Qualified Bid (the "Baseline Bid") for the Assets to serve as the starting point at the Auction. At least one business day prior to the Auction, the Debtors will provide copies of the Baseline Bid to all Qualified |

18

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| | Bidders. |
| **Rules of the Auction** | After consultation with the Consultation Parties, the Debtors may at any time adopt rules for the Auction that the Debtors reasonably determine to be appropriate to promote the goals of the bidding process, including one or more adjournments of the Auction. The rules of the Auction will be announced on the record at the outset of the Auction. |
| **Bidding at an Auction** | At the Auction, participants will be permitted to increase their initial Qualified Bids and improve their terms; *provided*, *however*, any such increased or improved bid must be a Qualified Bid (except that the Bid Deadline will not apply). The Debtors will announce the bidding increments for bids (the "Minimum Overbid") and other auction rules at the outset of the Auction with respect to the Assets. For the purpose of evaluating the value of the consideration provided by additional bids, the Debtors will take into account any Stalking Horse Protections that may be payable to a Stalking Horse Bidder under a Stalking Horse APA, if necessary.<br><br>The Debtors will conduct the Auction on an open basis and shall not require any Qualified Bidders to submit their last and final bids on a "blind" basis. |
| **Designation of Successful Bid and Alternate Bid** | After determining which Qualified Bids represent the best bids for the Assets in consultation with the Consultation Parties, the Debtors will designate such as the "Successful Bid"). As described in the Bidding Procedures, the Debtors may also determine, in their reasonable business judgment, after consultation with the Consultation Parties, which Qualified Bid is the next best bid for the Assets (the "Backup Bid"). |

19

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| Bids | The Debtors will be deemed to have accepted a Successful Bid only when an asset purchase agreement has been executed and such bid has been approved by entry of the applicable Sale Order. If a Successful Bidder does not close the applicable Sale contemplated by the applicable Successful Bid by the date agreed to by the Debtors and such Successful Bidder, then the Debtors will be authorized, but not required, to close with the party that submitted the Backup Bid, pursuant to the applicable Sale Order. |
| Successful Bid Notice | Following the designation of a Successful Bid, the Debtors will file a notice of the Successful Bid, along with copies of the proposed asset purchase agreement and Sale Order, marked to show changes from the Stalking Horse APA and Sale Order (a "Successful Bid Notice"). |
| Sale Hearing and Objections | Parties must file any objections to the approval of the Sale and/or the adequate assurance of future performance of the Successful Bidder no later than February 26, 2026 (the "Sale Objection Deadline"). At the hearing to approve the Sale (the "Sale Hearing"), the Debtors will seek the entry of the Sale Order approving, among other items, the sale of the Assets to the Successful Bidder pursuant to the terms and conditions set forth in the Successful Bid. The Sale Hearing may be adjourned or rescheduled by the Debtors in their discretion (after consultation with the Consultation Parties) without notice or with limited and shortened notice to parties. |
| Closing Date | The Bid must include a commitment to close the transactions contemplated by the counter APA by no later than fifteen days after entry of the Sale |

20

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| | Order. |

### c. Stalking Horse Selection

25. In the event that the Debtors, in consultation with the Consultation Parties, enter into a Stalking Horse APA with one or more Stalking Horse Bidders, the Debtors shall file by the Stalking Horse Selection Date a notice and proposed form of order with the Court (the "Stalking Horse Notice") and serve the Stalking Horse Notice on (a) the Stalking Horse Bidder, (b) the Office of the United States Trustee, (c) the Consultation Parties and (d) all persons and entities that have filed a request for service of filings in these chapter 11 cases pursuant to Bankruptcy Rule 2002. The Stalking Horse Notice shall: (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the amount of the bid submitted by the Stalking Horse Bidder (the "Stalking Horse Bid") and what portion (if any) is cash; (iii) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (iv) specify any proposed Bid Protections (including the amount and calculation thereof); (v) attach

21

the Stalking Horse APA, including all exhibits, schedules and attachments thereto; and (vi) specify the Assets to which the Stalking Horse Bid relates.

26.     Parties in interest will have three (3) days to file a written objection to the Debtors' designation of the Stalking Horse Bid.  If a party files an objection to the Stalking Horse Notice, the Court shall hold a hearing as soon thereafter as the Court is available.

### d.     The Notices

27.     Under Bankruptcy Rule 2002(a) and (c), the Debtors must notify its creditors of the proposed Sale of the Assets, including disclosure of the time and place of the Auction and the Sale Hearing, the terms and conditions of the Sale, the Bidding Procedures and the deadline for filing any objections thereto.  Accordingly, the Debtors have served a copy of this Motion and the proposed Bidding Procedures Order (the "Notice of Motion") in the manner set forth herein.

28.     The Debtors also propose, within three (3) business days after the entry of the Bidding Procedures Order, or as soon thereafter as practicable (the "Mailing Date"), to serve a copy of the Sale Notice (as defined below), the Bidding Procedures Order, and the Bidding Procedures by first-class mail, postage prepaid, or by email, where available, upon (a) all entities known to have expressed a *bona fide* interest in purchasing any of the Assets and such other parties identified by the Consultation Parties prior to the date hereof; (b) the Consultation Parties; (c) all entities known to

have asserted any lien, claim, or encumbrance in or upon any of the Assets; (d) all federal, state, and local environmental, regulatory, or taxing authorities or recording offices that have a reasonably known interest in the relief requested by the Motion; (e) the Office of the United States Trustee; and (f) all persons and entities that have filed a request for service of filings in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

29.     In addition, on the Mailing Date, or as soon thereafter as practicable, the Debtors will serve by first-class mail, postage prepaid, the notice of the sale, substantially in the form attached as **Exhibit 5** to the Motion (the "Sale Notice"), upon all other known creditors of the Debtors and all counterparties to the Debtors' executory contracts and unexpired leases.

30.     Finally, on the Mailing Date or as soon as practicable thereafter, the Debtors will cause the Sale Notice to be published on one occasion, in a national publication, such as the Wall Street Journal.

### e.     Assumption and Assignment of the Executory Contracts and Unexpired Leases

31.     In accordance with the proposed Bidding Procedures Order, within three (3) business days after the entry of the Bidding Procedures Order or as soon as practicable thereafter, the Debtors will file with this Court and serve the Cure Notice on each counterparty to an executory contract or unexpired lease related to the Assets, substantially in the form attached as **Exhibit 6** to the Motion, which Cure

Notice shall: (i) state the amounts necessary to cure defaults, if any, that the Debtors believe are necessary to assume such contracts or leases in accordance with section 365 of the Bankruptcy Code (the "Cure Amount"); (ii) notify the non-debtor counterparty that such party's contract(s) or lease(s) may be assumed and assigned to the Successful Bidder(s); (iii) state the date of the Sale Hearing and that objections to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing, or at a later hearing, as determined by the Debtors; and (iv) state the deadline by which the non-debtor counterparty may file an objection to the Cure Amount(s) or to the assumption and assignment of the applicable contract(s) and/or lease(s); provided, however, that the inclusion of a contract, lease or agreement on the Cure Notice shall not constitute an admission that such contract, lease or agreement is an executory contract or unexpired lease or that it will, in fact, be assumed and assigned in connection with any Sale of the Assets. If no Cure Amount is listed, the Debtors believe that no amount to cure defaults under the respective executory contract or unexpired lease is owed by it thereunder. The Debtors reserve all rights, claims, and causes of action with respect to the contracts, leases, and agreements listed on the Cure Notice.

32.     The Debtors propose that any objection to the Cure Amount or the assumption and assignment of the applicable contract(s) and/or lease(s) (exclusive of the Successful Bidder's adequate assurance of future performance which any such

24

objection shall be filed by the Sale Objection Deadline) must be filed with the Clerk of the Court, 211 W. Fort St., Detroit, Michigan 48226, and served so as to be received by the Consultation Parties, on or before January 23, 2026 (the "Cure Objection Deadline"). Any such objection must also state (i) the basis for such objection and (ii) with specificity what Cure Amount the non-debtor counterparty to the relevant executory contract or unexpired lease believes is required (in all cases with appropriate documentation in support thereof).

33. Any objection solely to the Cure Amount may not prevent or delay the Debtors' assumption and assignment of assumed and assigned contract or lease. If an entity objects solely to the Cure Amount, the Debtors may, with the consent of the relevant Successful Bidder, hold the claimed Cure Amount in reserve pending further order of the Court or mutual agreement of the parties. So long as the Cure Amount is held in reserve, and there are no other unresolved objections to assumption and assignment of the applicable assumed and assigned contract or lease, the Debtors can, without further delay, assume and assign such contract or lease. Under such circumstances, the objecting non-debtor counterparty's recourse is limited to the funds held in reserve.

34. If no objection to the Cure Amount is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the

contrary in any Purchased Contracts or other document as of the date of the Cure Notice.

35. As soon as reasonably practicable after receiving the schedule from each Qualified Bidder of those executory contracts or unexpired leases it wishes to assume (the "Buyer Designated Contracts"), and no later than two (2) business days prior to the date of the Auction, the Debtors will file such schedule with the Clerk of the Bankruptcy Court.

36. As soon as reasonably practicable after receiving the schedule from each Qualified Bidder of those executory contracts or unexpired leases it wishes to assume and have assigned to it, if any, and no later than February 23, 2026, the Debtors shall provide evidence to each executory contract or unexpired lease counterparty that each Qualified Bidder has the ability to comply with the requirements of adequate assurance of future performance; provided that any such evidence that constitutes nonpublic information shall be provided on a confidential basis. All Qualified Bidders are deemed to consent to the transmission of such evidence of adequate assurances of future performance on a confidential basis to counsel for the applicable executory contract or unexpired lease counterparties via email with such information to be used only for purpose of assessing the applicable Qualified Bidder.

37. To the extent that any non-debtor counterparty wishes to object to the adequate assurance of future performance of the Successful Bidder under the applicable executory contract(s) or unexpired lease(s), then such non-debtor counterparty shall file a written objection with the Court and serve on the Consultation Parties and the Successful Bidder so that such objection is received on or before the Sale Objection Deadline.

38. To the extent that any non-debtor counterparty does not timely file and serve an objection as set forth above herein, such counterparty will be: (i) deemed to have consented to the Cure Amount(s), if any, set forth in the Cure Notice; (ii) barred, estopped, and enjoined from asserting any additional Cure Amount(s) under the assumed and assigned executory contract(s) or unexpired lease(s); (iii) barred from objecting to the assumption and assignment of the applicable assumed and assigned executory contract(s) or unexpired lease(s) to the Successful Bidder; and (iv) barred from objecting to adequate assurance of future performance by the assignee.

**II. Grounds for Approval of the Motion**

**a. The Bidding Procedures Are Fair and Reasonable**

39. In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or by auction. In accordance with the Bidding Procedures, the Debtors seeks to market and sell its

Assets through a competitive bidding process to maximize value and avoid the further deterioration of the Debtors' business. Consequently, the Debtors believe that good cause exists to expose the Assets to sale pursuant to the procedures proposed herein.

40. The Debtors believe that the Bidding Procedures are appropriate under sections 105, 363 and 365 of the Bankruptcy Code to ensure that the bidding and sale process is conducted fairly and will yield the highest value for its estate. The Bidding Procedures are designed to facilitate a competitive bidding process in which all potential bidders are encouraged to participate and submit competing bids for the Assets. The Bidding Procedures also provide potential bidders with sufficient notice and opportunity to acquire information necessary to submit a timely and informed bid. At the same time, the Bidding Procedures provide the Debtors with the opportunity to consider all competing offers and to select, in their reasonable business judgment, and after consulting with the Consultation Parties, the highest or otherwise best offer for the Assets.

41. The Debtors believe that the Bidding Procedures provide an appropriate framework for the sale of the Assets that will enable the Debtors to review, analyze, and compare, in a relatively uniform fashion, all offers received to determine which offer is the highest or otherwise best and in the best interests of the Debtors' estates. Accordingly, the Debtors believe this Court should approve the Bidding Procedures.

28

### b. Approval of the Sale Is Warranted Under Section 363(b) of the Bankruptcy Code

42. Compelling business justifications exist for the proposed Sale. First, the Debtors do not have sufficient liquidity or access to financing to fund a protracted and contentious chapter 11 case. As a result, and cognizant of the Debtors' current monthly cash outlay, continued use of cash collateral, the depletion of its assets through normal operations, and its fiduciary obligations, the Debtors believe that a sale of substantially all of their assets offers the best available alternative at this juncture. Accordingly, the Debtors have determined that they should pursue the Sale of the Assets on the terms set forth in the APA, subject to higher and better offers as provided in the Bidding Procedures.

43. Notwithstanding the Debtors' conclusion that the terms of the APA are fair and reasonable, they will nonetheless expose the Assets to higher or otherwise better offers. The Sale of the Assets pursuant to section 363 of the Bankruptcy Code will enable the expeditious transfer of such assets, an approach necessary to maximize and preserve the going-concern value of such assets.

44. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order,

29

process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

45. In approving the Sale outside the ordinary course of business and outside of a chapter 11 plan pursuant to section 363 of the Bankruptcy Code, courts, including those in the Sixth Circuit, have adopted the "sound business reason" test established by the Second Circuit in *Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corp.),* 722 F.2d 1063 (2nd Cir. 1983). *See Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 391 (6th Cir. 1986); *In re Nicole Energy Servs., Inc.,* 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008); *In re Jillian's Entm't Holdings,* 327 B.R. 616, 617 (Bankr. W.D. Ky. 2005) (stating that the *Lionel* standard has been adopted by the vast majority of courts); *see also In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of a debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the buyer is acting in good faith).

46. A debtor's showing of sound business justification need not be unduly exhaustive; instead the debtor or trustee is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.,* 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to

30

justify a sale depends upon the facts and circumstances of each case. *See Lionel*, 722 F.2d at 1071. Bankruptcy courts are given substantial discretion in deciding whether to authorize a sale of a Debtors' assets outside of the ordinary course of business. *See In re Chateaugay Corp.,* 973 F.2d 141, 144 (2nd Cir. 1992).

47.     As discussed above, the Debtors and their professionals have concluded after due deliberation that, in light of the distressed nature of the Debtors' business, the Sale represents the best and only alternative currently available. Consequently, the proposed Sale in accordance with the Bidding Procedures satisfies the "sound business purpose" test for the sale of assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code.

48.     The APA and proposed Sale will be the product of vigorous arms' length, good faith negotiations between the relevant parties.  Finally, adequate and reasonable notice of the sale process is being provided, as set forth herein.

49.     Accordingly, the Debtors submit that the Sale of the Assets as contemplated herein and in the Bidding Procedures is in the best interests of the Debtors, their estates and creditors, and should be approved.

    **c.    The Assets Should Be Sold Free and Clear of Claims, Liens, Encumbrances and Interests Under Section 363(f) of the Bankruptcy Code**

50. The Debtors also submit that the Sale of the Assets should be free and clear of any and all liens, claims, encumbrances and interests under section 363(f) of the Bankruptcy Code (other than Assumed Liabilities as provided in the APA).

51. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of third-party interests only if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interests; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Since section 363(f) is written in the disjunctive, any of the five conditions provides authority to sell free and clear of claims, liens and encumbrances. *See generally In re Leckie Smokeless Coal Co.*, 99 F.3d 573 (4th Cir. 1996); *In re Gulf States Steel*, *Inc. of Ala.*, 285 B.R. 497, 506 (Bankr. N.D. Ala. 2002). Therefore, this Court may approve the Sale free and clear of liens even if all lien holders have not consented.

52. Section 363(f)(5) of the Bankruptcy Code allows a debtor to sell property free and clear of liens when a legal or equitable proceeding could compel the lienholder to accept less than full money satisfaction for its interest. See In re Grand Slam U.S.A., 178 B.R. 460, 462 (E.D. Mich. 1995) ("Thus, it is clear that Section 363(f)(5) allows trustees of an estate to sell property free and clear of liens

32

when 'a legal or equitable proceeding' exists that will force the lien holder to accept less than full money satisfaction for their interest.").

53. The Debtors submit that each lien, claim, encumbrance and interest that is not an Assumed Liability under the APA satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code. If an entity with an encumbrance on the Assets does not consent to the proposed Sale of such assets, the Debtors intend to demonstrate at the Sale Hearing its satisfaction of the requirements of section 363(f) of the Bankruptcy Code. Alternatively, the Debtors may sell the Assets free and clear of any other interests under section 363(f)(5) of the Bankruptcy Code because the lien, claim, encumbrance or interest on any assets sold will attach to the cash proceeds of such Sale in their order of priority and entities holding such interests could be compelled to accept money satisfaction in legal or equitable proceedings. Accordingly, pursuant to section 363 of the Bankruptcy Code, the Debtors may sell the Assets free and clear of all claims, liens and encumbrances.

54. Moreover, the Debtors have sent or will send the Sale Notice to any purported lienholders. If such lienholders do not object to the proposed Sale, then their consent should reasonably be presumed. Accordingly, the Debtors request that unless an entity asserting a lien or encumbrance on any of the Assets (other than with respect to Assumed Liabilities) timely objects to this Motion, such entity shall be deemed to have consented to any Sale approved at the Sale Hearing.

33

55.     It is also appropriate to sell the Assets free and clear of successor liability relating to the Debtors' business.  Such limitations on successor liability ensure that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to the Debtors. Courts have consistently held that a buyer of a Debtors' assets pursuant to a section 363 sale takes free and clear from successor liability relating to the Debtors' business.  *See e.g.*, *In re Tran World Airlines, Inc.*, 322 F.3d 283, 288-90 (3rd Cir. 2003) (sale of assets pursuant to section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 585 (4th Cir. 1996) (affirming the sale of debtors' assets free and clear of certain taxes); *In re Insilco Techs., Inc.*, 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory).

56.     The purpose of a sale order purporting to authorize the transfer of assets free and clear of all claims, liens, encumbrances and interests would be defeated if claimants could thereafter use the transfer as a basis to assert claims against a buyer arising from a seller's pre-sale conduct. Moreover, without such assurances, potential bidders may choose not to participate in the Auction or, if they did, would submit reduced bid amounts. To that end, the Successful Bidder should not be liable

34

under any theory of successor liability relating to the Debtors' business but should hold the Assets free and clear.

### d. A Successful Bidder Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code

57. Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *See In re Made In Detroit, Inc.,* 414 F.3d 576, 581 (6th Cir. 2005); *Miami Ctr. Ltd. P'ship v. Bank of New York*, 838 F.2d 1547, 1554 (11th Cir. 1988); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Abbotts Dairies of Penn.*, 788 F.2d 143, 147 (3rd Cir. 1986).

58. To be considered a "good faith purchaser" under section 363(m) of the Bankruptcy Code, the purchaser "must demonstrate that it purchased the property 'in good faith' and that it did so 'for value.'" *In re Made in Detroit, Inc.*, 414 F.3d at 581 (quoting *Cumberland Farms Dairy, Inc. v. Nat'l Farmers' Org., Inc. (In re Abbotts Dairies of Penn., Inc.),* 788 F.2d 143, 147 (3d Cir. 1986)). It is anticipated that any Successful Bidder will tender substantial value for the Assets.

59. A demonstration of a lack of good faith requires a showing of "fraud or collusion between the purchaser and the seller or the other bidders, or that the purchaser's actions constituted 'an attempt to take grossly unfair advantage of other bidders.'" 255 *Park Plaza Assocs. Ltd. P'ship v. Conn. Gen. Life Ins. Co. (In re 255*

*Park Plaza Assocs. Ltd. P'ship)*, 100 F.3d 1214, 1218 (6th Cir. 1996) (quoting *In re Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.),* 846 F.2d 1170, 1173 (9th Cir. 1988)) (additional citations omitted).

60. The Stalking Horse Bidder, if any, or any other Successful Bidder would be a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and the resulting purchase agreement would be a good-faith agreement on arm's-length terms entitled to the protections of section 363(m) of the Bankruptcy Code.

61. Pursuant to the Bidding Procedures, any Successful Bidder will have had to present a proposal in accordance with the Bidding Procedures. In addition, Debtors will not choose as the Successful Bidder any entity whose good faith under § 363(m) can reasonably be doubted, and Debtors will be prepared to present the Court with evidence to prove the "good faith" standard of section 363(m) of the Bankruptcy Code has been satisfied.

62. Additionally, as set forth in more detail above, the consideration to be received by Debtors pursuant to the Sale will be subject to a market process by virtue of Debtors' marketing efforts, with the assistance of their seasoned professionals, and the Auction will be substantial, fair, and reasonable.

63. The purchase agreement entered into by Debtors and the Successful Bidder will also be the result of extensive arm's-length negotiations, during which

all parties will have the opportunity to be, and Debtors will be, represented by competent counsel, and any purchase agreement with a Successful Bidder will be the culmination of Debtors' competitive market process and, if necessary, the Auction, in which all negotiations will be conducted on an arm's-length, good-faith basis.

64. Where there is no indication of any "fraud or collusion between the purchaser and other bidders or the trustee, or any attempt to take grossly unfair advantage of other bidders" or similar conduct, there is no cause that would permit the Sale to be avoided pursuant to section 363(n) of the Bankruptcy Code. Moreover, with respect to potential bidders, the Bidding Procedures are designed to ensure that no party is able to exert undue influence over the process.

65. Finally, the Successful Bidder's offer will be evaluated and approved by Debtors in consultation with its advisors and the Consultation Parties. Accordingly, Debtors believe that the Successful Bidder and the resulting purchase agreement should be entitled to the full protections of Bankruptcy Code section 363(m).

       **e.    Assumption and Assignment of Certain Executory Contracts and Unexpired Leases**

66. To enhance the value of the Debtors' estates (by curtailing further administrative liability), the Debtors requests authority under section 365 of the Bankruptcy Code to assume and assign the Purchased Contracts to the Successful Bidder. The Debtors further request that the Sale Order provide that the Purchased

Contracts will be transferred to, and remain in full force and effect for the benefit of, the Successful Bidder notwithstanding any provisions in such assigned contracts and/or leases, including those described in sections 365(b)(2), (f)(1), and (f)(3) of the Bankruptcy Code, that prohibit such assignments.

67. A debtor in bankruptcy may, subject to court approval, assume and assign executory contracts and unexpired leases under section 365 of the Bankruptcy Code. 11 U.S.C. § 365(a). Courts routinely approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that a Debtors' decision to take such action will benefit the Debtors' estate and is an exercise of sound business judgment. *See, e.g., L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.*), 209 F.3d 291, 298 (3rd Cir. 2000); *Edwin C. Levy Co. v. McLouth Steel Corp. (In re McLouth Steel Corp.)*, 20 B.R. 688, 692 (Bankr. E.D. Mich. 1982) ("In determining whether a certain contract should be assumed or rejected, the decision should rest on the business judgment of the debtor."); *In re Greektown Holdings, L.L.C.*, No. 08-53104, 2009 WL 1653461, at *1 (Bankr. E.D. Mich. May 13, 2009) (same). The assumption and assignment of the Purchased Contracts related to the Assets is an integral component of the Sale, without which the Sale would not be a viable option.

68. Section 365(b)(1) of the Bankruptcy Code requires that, if there has been a default in a Debtors' unexpired lease or executory contract, other than certain

38

nonmonetary defaults as set forth in the statute, such unexpired lease or executory contract may not be assumed unless, at the time of the assumption: (i) such default is cured or there is adequate assurance that such default will be cured, (ii) compensation or adequate assurance of compensation is provided for any actual pecuniary loss resulting from such default, and (iii) adequate assurance of future performance under the lease is provided. 11 U.S.C. § 365(b)(1)(A)-(C).

69. As set forth above, pursuant to the terms of the proposed Bidding Procedures Order, the Debtors will send the Cure Notice to all counterparties to the executory contracts and unexpired leases notifying such counterparties of the potential assumption by the Debtors and assignment to the relevant Successful Bidder of such contract and/or lease. The Cure Notice will also set forth the Cure Amount, if any, owing for each such contract and/or lease according to the Debtors' books and records.

70. Counterparties to such contract and/or lease will be given sufficient time (as set forth herein and in the proposed Bidding Procedures Order) to object to the proposed Cure Amounts, if any, set forth in the Cure Notice. If no objection is filed with regard to a particular Cure Amount, such Cure Amount shall be binding on the Debtors, the Successful Bidder and the applicable non-Debtor counterparty. The payment of the Cure Amounts specified in the Cure Notice (or a different amount, either agreed to by the Debtors or resolved by the Court as a result of a

timely-filed objection by the relevant non-Debtor counterparty) will be in full and final satisfaction of all obligations to cure defaults and compensate the counterparties for any pecuniary losses under the applicable executory contract(s) and/or lease(s) pursuant to section 365(b)(1) of the Bankruptcy Code, unless the Debtors determine, before the Sale Hearing, that a particular contract or lease is not executory or unexpired, and does not need to be cured to transfer the relevant Assets to the Successful Bidder.

71.     Section 365(f)(2)(B) of the Bankruptcy Code states that a debtor may assign its unexpired leases and executory contracts if, among other things, the assignee provides "adequate assurance of future performance." 11 U.S.C. § 365(f)(2)(B). If necessary, the Successful Bidder must submit written evidence of its ability to provide adequate assurance of future performance under the applicable contracts or leases as set forth above and in the Bidding Procedures Order. The affected non-debtor counterparties will also be able to challenge the ability of the Successful Bidder to provide adequate assurance as provided in the Bidding Procedures Order.

72.     Any assumption and assignment of a Purchased Contract will be subject to all of the provisions of such contract and/or lease, to the extent required by applicable law and in accordance with applicable provisions of the Bankruptcy Code. The Bidding Procedures are designed to ensure that any Successful Bidder is

financially able and prepared to undertake all of the relevant obligations under the assigned contract and/or lease, and the Debtors, together with the relevant Successful Bidder, will establish, as necessary, at the Sale Hearing, the requisite adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code with respect to the potential assumption and assignment of the applicable assigned contract and/or lease. Consequently, assumption and assignment of the Purchased Contracts in connection with the Sale of the Assets is appropriate under the circumstances.

### f.     Secured Creditors Allowed to Credit Bid Allowed Claim

73.     Section 363(k) of the Bankruptcy Code states:

> At a sale under subsection (b) of [section 363] of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. § 363(k). Based upon this provision of the Bankruptcy Code, "[i]t is well settled among district and bankruptcy courts that creditors can bid the full face value of their secured claims under § 363(k)." *Cohen v. KB Mezzanine Fund II, LP* (*In re SubMicron Sys. Corp.*), 432 F.3d 448, 459 (3rd Cir. 2006); *see also RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012) (upholding a secured creditor's right to credit bid, stating that it "helps to protect … against the risk that its collateral will be sold at a depressed price").

41

74. In addition, district and bankruptcy courts have endorsed credit bidding in the full amount of the secured creditor's claim. *See*, *e.g.*, *In re SunCruz Casinos, LLC*, 298 B.R. 833, 839 (Bankr. S.D. Fla. 2003) ("[T]he plain language of [section 363(k)] makes clear that the secured creditor may credit bid its *entire claim*, including any unsecured deficiency portion thereof."); *In re Midway Invs., Ltd.*, 187 B.R. 382, 391 n. 12 (Bankr. S.D. Fla. 1995) ("[A] secured creditor may bid in the full amount of the creditor's allowed claim, including the secured portion and any unsecured portion thereof"); *In re Realty Invs., Ltd. V*, 72 B.R. 143, 146 (Bankr. C.D. Cal. 1987) (same).

75. Accordingly, secured creditors with allowed claims, including SummitBridge, should be permitted to bid any portion of their secured claim pursuant to section 363(k) of the Bankruptcy Code. As a result, the proposed Bidding Procedures allow credit bidding subject to section 363(k) of the Bankruptcy Code and expressly permitsSummitBridge, in its capacity as DIP Lender and Pre-Petition Lender, respectively, to credit bid, under section 363(k) of the Bankruptcy Code all, or any portion, of its respective claims (including, without limitation, all accrued and unpaid interest, fees (including reasonable attorneys' fees), and expenses) in connection with the Sale.

g. **The Bid Protections Are Fair and Reasonable and Should Be Approved**

76.     Any Stalking Horse Bidder will incur costs, expenses, and risks associated with submitting a bid for the Assets.

77.     These expenses will not be limited to ordinary due diligence because any Stalking Horse Bidder will incur expenses associated with the negotiation and preparation of sale documents, as well as bankruptcy pleadings necessary to consummate the Sale.

78.     The requirements in the Bidding Procedures that a Qualified Bidder submit a bid with a cash purchase price not less than the Stalking Horse Bid, plus the Stalking Horse Bid Protections, plus the Bidding Increment, if a Stalking Horse Bid has been secured, provides Debtors' estates with sufficient funds to pay the Stalking Horse Bid Protections.

79.     Approval of bid protections in connection with the sale of assets under section 363 of the Bankruptcy Code is an accepted practice. Bankruptcy courts have approved bidding incentives similar to the Stalking Horse Bid Protections under the business judgment rule, which proscribes judicial second-guessing of the actions of a debtor taken in good faith and in the exercise of honest judgment. *In re 995 Fifth Ave. Assocs., L.P.,* 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may be "legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking.")

80. Courts that do not follow the business judgment rule analysis focus on whether the break-up fees unduly burden a Debtors' estate and whether rights of parties-in-interest are protected. *In re Hupp Indus.*, 140 B.R. 191, 196 (Bankr. N.D. Ohio 1992) ("bidding incentives such as break-up fees and bid increment limitations are carefully scrutinized in § 363(b) asset sales to insure that the Debtors' estate is not unduly burdened and that the relative rights of the parties in interest are protected.").

81. Here, the proposed Stalking Horse Bid Protections (a) will not place an undue burden on Debtors' estates since it is payable solely from the proceeds of an alternative transaction; (b) is reasonable, (c) will enable Debtors to maximize the value of the Assets; and (d) would not burden the relative rights of parties in interest because these parties will be given an opportunity to be heard on the propriety of the Stalking Horse Bid Protections.

82. Debtors have provided a compelling business justification for their judgment that the Stalking Horse Bid Protections are appropriate under the circumstances.

83. Any Stalking Horse Bidder will have invested significant time and resources negotiating the Sale with Debtors and preparing sale-related documents and pleadings.

84. A Stalking Horse Bidder should not be penalized for its initiative and investment simply because Debtors are compelled to accept a bid that is more than the Stalking Horse Bid.

85. The Stalking Horse Bid Protections would be payable only on the conditions set forth in the Stalking Horse Bidder's APA. If those conditions are satisfied, the Stalking Horse Bidder will have provided significant benefit to Debtors' estates by initiating the Auction and helping cause another bidder to consummate a sale transaction with Debtors at a price substantially higher than the Purchase Price.

86. Accordingly, Debtors have demonstrated a compelling business justification for the Stalking Horse Bid Protections, and the Stalking Horse Bid Protections qualifies as an administrative expense pursuant to section 503(b) of the Bankruptcy Code.

### h. The Proposed Bidding Procedures Are Appropriate under the Circumstances

87. It has long been recognized by bankruptcy courts that a competitive bidding process is the best way to realize the highest value that industry participants place on assets. See, e.g., *In re Bidermann Indus. U.S.A., Inc.*, 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997). The Bidding Procedures reflect an understanding of this principle by facilitating competitive bidding for the Assets.

45

88.     Bidding procedures should be approved when they provide a benefit to a Debtors' estate by maximizing the value of a Debtors' assets. See *In re Edwards*, 228 B.R. 552, 361 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.").

89.     Courts have made clear that a Debtors' business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. See *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (noting "[u]nder Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'"); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (same); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (same); see also *In re Integrated Resources, Inc.*, 147 B.R. 650, 656–57 (S.D.N.Y. 1992) (noting that bidding procedures negotiated by a trustee are to be reviewed in accordance with the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

90.     Here, the Bidding Procedures contain limitations on participants in the Auction designed to maximize the efficiency of the Auction process.

91.     By limiting participation in the Auction to Qualified Bidders, delineating requirements for being designated as a Qualified Bidder, and establishing an overbid requirement, the Bidding Procedures will discourage bidding

by parties other than those with the financial capacity to purchase the Assets. These requirements are not onerous and will likely not discourage legitimate Auction participants from submitting bids.

92.     The Bidding Procedures would create a process for fully competitive bidding among the parties most likely to be interested in purchasing the Assets and would maximize the value of Debtors' estates by providing certain protections for Debtors' administrative, priority, and unsecured creditors.

### i.     The Form, Manner, and Extent of Notice of the Motion and the Proposed Sale are Appropriate and Adequate Under the Circumstances

93.     The Debtors will serve the Sale Notice and the Cure Notice in accordance with the Bidding Procedures Order, and will serve this Motion as set forth herein.  The notice of the proposed Sale to be provided by the Debtors as set forth herein sufficiently describes the terms and conditions of the proposed Sale.

94.     Several sections of the Bankruptcy Code and Bankruptcy Rules dictate the sufficiency of notice and adequacy of service.  As discussed below, the content and manner of service of this Motion and the related notices satisfy all such requirements.

95.     Section 363 of the Bankruptcy Code provides that a trustee may sell property "after notice and hearing."  Under section 102(1) of the Bankruptcy Code, the phrase "after notice and hearing" means "notice as is appropriate in the particular

47

circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). As set forth above, creditors have been provided notice of the salient details regarding this Motion and the Sale Hearing. Accordingly, notice is sufficient under section 363 of the Bankruptcy Code.

96. Bankruptcy Rule 2002 requires twenty-one (21) days' notice of the proposed sale of property other than in the ordinary course of business. In addition, Bankruptcy Rule 2002 provides that notice of a sale shall "include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections." Fed.R.Bankr.P. 2002. As set forth above, the notice of this Motion that has been and will be provided by the Debtor satisfies each of these requirements.

97. Bankruptcy Rule 6004 requires that notice of sales of property outside of the ordinary course of business complies with Bankruptcy Rule 2002. As set forth above, the Debtors have complied with Bankruptcy Rule 2002. Bankruptcy Rule 6006 requires notice of a motion to assume and assign an executory contract or unexpired lease to be served on the counterparty to such contract or lease, as well as on other parties in interest as the court may direct. The Sale Notice and the Cure Notice have been or will be served on all counterparties to all potentially Purchased Contracts, thereby satisfying this requirement.

98.     The notices of this Motion that are being provided as described herein, including the notice being provided by publication as set forth above, are "reasonably calculated" to apprise interested parties of the pendency of the matter and to afford them an opportunity to object. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).  Parties in interest have been, and should be found to have been, afforded adequate notice of this Motion, the Sale, the Bidding Procedures and the other relief requested herein.  The Debtors submit that the notice it has provided and intends to provide as outlined above with respect to the proposed Sale, the Bidding Procedures, the Bid Protections, and the Cure Amounts, as applicable, is reasonable and appropriate and constitutes good and adequate notice of the sale of the Assets and the procedures and proceedings related thereto and therefore should be approved by this Court.

**j.      The Stay of the Sale Order Should Be Waived**

99.     Pursuant to Bankruptcy Rules 6004(h) and 6006(d), an order authorizing the sale of property or the assignment of an unexpired lease is stayed for fourteen (14) days after the entry of an order unless the Court orders otherwise.

100.    The Debtors request that this Court order that such stay is not applicable with respect to the Sale of the Assets and assignment and assumption of the Purchased Contracts.  To delay closing on the Sale will burden the estates and require unnecessary expenditures of the Debtors' limited resources, to the detriment of the

entirety of the bankruptcy estates.

101.  The Debtors note that requests to waive the stay imposed under Bankruptcy Rules 6004(h) and 6006(d) are routinely granted. *See*, *e.g.*, *In re the Great Atlantic & Pacific Tea Co., Inc.*, No. 15-23007 (SCC) (Bankr. S.D.N.Y. Aug. 11, 2015); *In re Delia's, Inc.*, No. 14-23678 (RDD) (Bankr. S.D.N.Y. Feb. 10, 2015); *In re Midway Games Inc.*, No. 09-10465 (KG) (Bankr. D. Del. June 3, 2009); *In re Nortel Networks Inc.*, No. 09-10138 (Bankr. D. Del. Mar. 3, 2009).

### No Prior Request

102.  No prior request for the relief sought herein has been requested from this Court or any other court.

### Notice

103.  Notice of this Motion has been provided to: (a) the Consultation Parties; (b) the Office of the United States Trustee; and (c) all persons and entities that have filed a request for service of filings in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

104.  The Debtors submit that, under the circumstances, no other or further notice is required.

### Conclusion

**WHEREFORE,** the Debtors respectfully request that the Court grant the

relief requested in this Motion and grant the Debtors such other and further relief as

this Court deems just and proper.

Dated: December 18, 2025                    Respectfully submitted,
                                            **STEVENSON & BULLOCK, P.L.C.**

                                            By: /s/ Elliot G. Crowder
                                            Charles D. Bullock (P55550)
                                            Elliot G. Crowder (P76137)
                                            Ernest M. Hassan, III (P67815)
                                            *Counsel for Luca Mariano Distillery, LLC*
                                            26100 American Drive, Suite 500
                                            Southfield, MI 48034
                                            Phone: (248) 354-7906
                                            Facsimile: (248) 354-7907
                                            Email: cbullock@sbplclaw.com
                                            Email: ecrowder@sbplclaw.com
                                            Email: ehassan@sbplclaw.com

                                            &

                                            By: /s/ Robert N. Bassel
                                            Robert N. Bassel (P48420)
                                            *Counsel for LMD Holdings, LLC*
                                            P.O. Box T
                                            Clinton Township, MI 49236
                                            Phone: (248) 677-1234
                                            Email: bbassel@gmail.com

# EXHIBIT 1
## BIDDING PROCEDURES ORDER

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re:<br><br>LMD Holdings, LLC, *et ano*.,[1]<br><br>          Debtors. | Case No. 25-47214<br>Chapter 11<br>Hon. Paul R. Hage<br><br>(Jointly Administered) |

**ORDER (I) ESTABLISHING BIDDING PROCEDURES, (II) SCHEDULING AN AUCTION AND A SALE HEARING IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (III) SETTING CERTAIN DATES AND DEADLINES IN CONNECTION THEREWITH, (IV) APPROVING THE FORM OF THE ASSET PURCHASE AGREEMENT, INCLUDING THE STALKING HORSE BID PROTECTIONS, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors (A) for an order (this "Order" or the "Bidding Procedures Order"): (I) approving the proposed auction and bidding procedures, which are attached as **Exhibit 3** to the Motion (the "Bidding Procedures"), to be employed in connection with the proposed sale (the "Sale") of the Debtors' assets (collectively, the "Assets"); (II) approving the form of that certain Asset Purchase Agreement together with all related documents and agreements as well as all exhibits, schedules, and addenda thereto (the "APA");

---

[1] The Debtors in these jointly administered proceedings are LMD Holdings, LLC (Case No. 25-47214) and Luca Mariano Distillery, LLC (Case No. 25-51472).

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion, the Bidding Procedures, or the APA, as applicable.

(III) establishing procedures for the assumption and assignment of executory contracts and unexpired leases; (IV) approving the form and manner of notice of the Sale, the notice of assumption and assignment of executory contracts and unexpired leases, including the form and manner of notice of proposed cure amounts (the "Cure Notice") and the other notices set forth herein; (V) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to consider approval of the Sale and (VI) granting related relief (collectively, (A)(I) through (VI) above, the "Bidding Procedures Relief"); and (B) for an order (the "Sale Order") authorizing (I) the Sale of the Assets to the bidder with the highest or otherwise best bid (the "Successful Bidder") pursuant to the APA, in each case free and clear of all liens, claims, encumbrances and interests other than Assumed Liabilities as provided therein; and (II) the Debtors' assumption and assignment of the applicable executory contracts and/or unexpired leases to the Successful Bidder; and the Court having considered that portion of the Motion seeking the Bidding Procedures Relief, and the arguments of counsel made and the evidence adduced, at the hearing on that portion of the Motion (the "Bidding Procedures Hearing"); and due and sufficient notice of the Bidding Procedures Hearing and the relief sought therein having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and all objections thereto (the "Objections") and it appearing that the Bidding Procedures Relief requested in the

2

Motion is in the best interests of the Debtors, their estates, creditors and other parties in interest; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby,

**FOUND, CONCLUDED AND DETERMINED THAT:**[3]

A.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested in the Motion are, *inter alia*, sections 105, 363, 365, and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, 9007 and 9014 and Local Rules 6004-1 and 9014-1.

B.      The relief granted herein is in the best interests of the Debtors, their estates and creditors, and other parties in interest.

C.      The Debtors have articulated good and sufficient business reasons for the Court to (i) approve the Bidding Procedures, Bid Protections, the Assumption and Assignment Procedures, the form and manner of the Sale Notice, the Cure

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Notice and the other notices of the Motion, the Auction, and the Sale Hearing as set forth herein, (ii) set the date for the Auction, the Sale Hearing and the other dates set forth herein, and (iii) grant the relief requested in the Motion as provided herein.

D.  Due, sufficient and adequate notice of the Bidding Procedures Hearing and the relief granted in this Order has been given in light of the circumstances and the nature of the relief requested, and no other or further notice thereof is required. The Debtors' notice of the Motion and the relief requested in the Motion for which approval was sought at the Bidding Procedures Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice under Bankruptcy Rules 2002, 4001, 6004, and 6006, and no other or further notice of, or hearing on, this Order and that portion of the Motion being approved hereby is required.

E.  The Debtors' Sale Notice (Docket # __) and other notices contemplated hereunder with respect to the Sale, the Auction and the Sale Hearing are appropriate and reasonably calculated to provide all interested parties with timely and proper notice thereof and no further notice of each is necessary or required.

F.  The Bidding Procedures (Docket # __) are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtors' estates in connection with the Sale.

4

G.      The Bid Protections, to the extent payable under the Stalking Horse APA, must be (i) an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, (ii) of substantial benefit to the Debtors' estates, (iii) reasonable and appropriate, including in light of the size and nature of the transaction and the efforts that have been and will be expended by the Stalking Horse Bidder, (iv) negotiated by the parties and their respective advisors at arm's-length and in good faith, and (v) necessary to ensure that the Stalking Horse Bidder will continue to pursue the proposed Sale of the Assets.

H.      The Assumption and Assignment Procedures are reasonable and appropriate.

**IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.      Any objection to the portions of the Motion seeking approval of the Bidding Procedures Relief or any other relief granted in this Order, to the extent not resolved, waived, or withdrawn, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.      The APA is hereby approved and is appropriate and reasonably calculated to enable the Debtors and other parties in interest to easily compare and contrast the differing terms of the bids presented at the Auction.

5

4.     The Bidding Procedures are hereby approved.  In the event of any inconsistency between the Bidding Procedures as set forth in **Exhibit 3** to the Motion and any other pleading, order, or document, including this Order, the terms of the Bidding Procedures shall control. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.  The failure to specifically include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

**The Bid Deadline**

5.     As further described in the Bidding Procedures, a potential Bidder who desires to make a Bid for the Assets shall deliver its Bid that satisfies the bidding requirements set forth in the Bidding Procedures to:  (a) counsel to the Debtors, Stevenson & Bullock, PLC, Attn: Elliot Crowder, 26100 American Drive, Suite 500, Southfield, MI 48034 and Robert N. Bassel, P.O. Box T, Clinton Township, MI 49236; (b) counsel to SummitBridge National Investments VIII LLC, Frost Brown Todd LLP, Attention: Ronald E. Gold, 3300 Great American Tower, 301 East 4th Street, Cincinnati, Ohio 45202, (c) counsel to Farm Credit Leasing Services Corporation, Warner Norcross + Judd LP, Attn: Elisabeth M. Von Eitzen, 180 E

6

Water Street, Ste. 7000, Kalamazoo, MI 49007, and (d) counsel to Farm Credit Mid-America, Dentons, Attn: James R. Irving, 101 South Fifth Street, Louisville, KY 40202 (collectively, the "Consultation Parties"), so as to be received by no later than **4:00 p.m. (Eastern Time) on February 20, 2026** (the "Bid Deadline").

6. To the extent any party submits a Bid (including a Credit Bid that is either revocable or subject to amendment) for any Assets, they shall not be a Consultation Party with respect to the evaluation and qualification of competing bids for the Assets included in such party's bid, or with respect to seeking and/or obtaining information about other bids, but shall remain a Consultation Party for other purposes as set forth in the Bidding Procedures and this Bidding Procedures Order.

**Notices of Sale, Bidding Procedures, Bid Protections and the Sale Hearing**

7. The notices described below are hereby approved, and service or publication thereof (as applicable) as set forth herein constitutes proper, timely, adequate, and sufficient notice of the Sale, the Bidding Procedures, the Bid Protections, and the Sale Hearing, and no other or further notice is required.

8. Within three (3) business days after the entry of this Order, or as soon thereafter as practicable (the "Mailing Date"), the Debtors shall serve a copy of the Sale Notice (as defined below), this Order, and the Bidding Procedures by first-class mail, postage prepaid, or by email, where available, upon: (a) all entities known to

7

have expressed a *bona fide* interest in purchasing any of the Assets at any time and such other parties identified by the Consultation Parties prior to the date hereof; (b) all entities known to have asserted any lien, claim or encumbrance in or upon any of the Assets; (c) all federal, state, and local, regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (d) the Office of the United States Trustee; and (e) all persons and entities that have filed a request for service of filings in this case pursuant to Bankruptcy Rule 2002.

9.     On the Mailing Date, or as soon thereafter as practicable, the Debtors shall serve by first-class mail, postage prepaid, the notice of the Sale, substantially in the form attached as **Exhibit 5** to the Motion (the "Sale Notice"), upon all other known creditors of the Debtors and all counterparties to the Debtors' executory contracts and unexpired leases.

10.     The Debtors shall publish a notice, substantially in the form of the Sale Notice, on one occasion, in a national publication, such as the Wall Street Journal, on the Mailing Date or as soon as practicable thereafter.  Such publication notice shall be deemed sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

11.     The Sale Hearing to approve the Sale shall be held on **March 3, 2026 at 11:00 AM (Eastern Time)**, at the United States Bankruptcy Court for the Eastern

25-47214-prh    Doc 100    Filed 12/18/25    Entered 12/18/25 17:05:29    Page 60 of 132

District of Michigan, 211 W. Fort St., Detroit, Michigan 48226, courtroom 1925, before the Honorable Paul R. Hage.

12.     Objections, if any, to the relief sought in the Sale Order ("Sale Objection(s)")[4] shall be in writing, filed with the Clerk of this Court (the "Clerk"), 211 W. Fort St., Detroit, Michigan 48226, together with proof of service, and served so as to be received by the Consultation Parties, on or before **February 26, 2026 (the "Sale Objection Deadline")**.

13.     Failure to file and serve a Sale Objection by the Sale Objection Deadline as set forth herein shall be deemed to be consent to the Sale for purposes of section 363(f) of the Bankruptcy Code.

14.     The Sale Hearing may be adjourned by the Debtors, after consulting with the Consultation Parties, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of the Debtors' chapter 11 case.

### The Auction

15.     The Debtors are authorized, if necessary, to conduct an auction (the "Auction") with respect to the Assets.  The Auction, if necessary, shall take place on

---

[4] Procedures for filing objections to the assumption and assignment of relevant executory contracts and unexpired leases are addressed below.

**February 25, 2026 at 10:00 A.M. (Eastern Time)** at the offices of Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MI 48034, or such other place and time as the Debtors shall notify all Qualified Bidders, the Consultation Parties, and their respective counsel and advisors. The Debtors are authorized, subject to the terms of this Order, to take actions reasonably necessary, in the discretion of the Debtors, to conduct and implement the Auction.

16. Only the Debtors, the Consultation Parties, and all Qualified Bidders, in each case, along with their respective counsel and advisors, may attend the Auction (such attendance to be in person) and only Qualified Bidders will be entitled to make any Bids at the Auction. The Debtors and their professionals shall direct and preside over the Auction, and the Auction shall be transcribed.

17. All Qualified Bidders participating in the Auction must confirm that they have (a) not engaged in any collusion with respect to the bidding or Sale of any of the Assets, (b) reviewed, understands, and accepts the Bidding Procedures, and (c) consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale or the Auction if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

18. Subject to the rights of parties in interest to (i) challenge the Sale or the sale process, (ii) challenge the Debtors' decisions with respect to the sale process,

10

(iii) argue that such decisions are not governed by the "business judgment" standard, or (iv) such other rights as such parties may have under applicable law, the Debtors may, after consulting with the Consultation Parties, (a) determine, in its business judgment, pursuant to the Bidding Procedures, which Qualified Bid is the highest or otherwise best proposal for the Assets (the "Successful Bid" and which is the next highest or otherwise best proposal for the Assets (the "Backup Bid") and (b) reject any bid that, in the Debtors' business judgment, is (x) inadequate or insufficient, (y) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bidding Procedures, or (z) contrary to the best interests of the Debtors and its estate, creditors, interest holders, or other parties-in-interest.

**The APA and Bid Protections**

19. Any obligations of the Debtors set forth in the APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order are authorized as set forth herein.

20. Pursuant to sections 105, 363, and 503 of the Bankruptcy Code, the Debtors are hereby authorized to pay the Stalking Horse Bid Protections pursuant to and subject to the terms and conditions set forth in the APA.

21. In the event that the Debtors, in consultation with the Consultation Parties, enter into a Stalking Horse APA with a Stalking Horse Bidder, the Debtors

11

shall file by the Stalking Horse Selection Date a notice and proposed form of order with the Court (the "Stalking Horse Notice") and serve the Stalking Horse Notice on (a) the Stalking Horse Bidder, (b) the Office of the United States Trustee, (c) the Consultation Parties and (d) all persons and entities that have filed a request for service of filings in this chapter 11 case pursuant to Bankruptcy Rule 2002. The Stalking Horse Notice shall: (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the amount of the Stalking Horse Bid and what portion (if any) is cash; (iii) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (iv) specify any proposed Bid Protections (including the amount and calculation thereof); (v) attach the Stalking Horse APA, including all exhibits, schedules and attachments thereto; and (vi) specify the Assets to which the Stalking Horse Bid relates. If a party files a timely objection to the Stalking Horse Notice, the Court shall hold a hearing as soon thereafter as the Court is available.

22. If a Stalking Horse Bidder is selected by the Debtors by the Stalking Horse Selection Date, the Debtors may provide the Stalking Horse Bidder with a break-up fee and expense reimbursement in the amount of cash equal to no more than $100,000 of actual and documented expenses incurred, including legal and

professional fees set forth in the Stalking Horse Bid, excluding any applicable Cure Amount (the "Stalking Horse Bid Protections").

23. The Stalking Horse Bid Protections are approved based upon a sound exercise of the Debtors' business judgment and the substantial value that a Stalking Horse Bid will create for the bankruptcy estates.

24. The Stalking Horse Bid Protections shall be the sole remedy of the Stalking Horse Bidder if the APA is terminated under circumstances where the Stalking Horse Bid Protections are payable.

## Assumption and Assignment Procedures

25. The Assumption and Assignment Procedures as set forth in the Motion are hereby approved and made part of this Order as if fully set forth herein. The Assumption and Assignment Procedures are appropriate and fair to all non-debtor counterparties and comply in all respects with the Bankruptcy Code.

### a. Cure Notice

26. The Cure Notice, substantially in the form attached as **Exhibit 6** to the Motion, is (i) reasonably calculated to provide sufficient effective notice to all non-debtor counterparties to assumed and assigned contracts or leases and any other affected parties of the Debtors' intent to assume and assign some or all of such contracts or leases and to afford the non-debtor counterparty to each such contract

13

or lease the opportunity to exercise any rights affected by the Motion pursuant to Bankruptcy Rules 2002, 6004, and 6006, and (ii) hereby approved.

27.     The inclusion of a contract on a Cure Notice shall not constitute or be deemed a determination or admission by the Debtors, the Buyer, any Successful Bidder, or any other party in interest that such contract is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that such contract or lease will be assumed in connection with the Sale of the Assets.  The Debtors reserves all rights, claims and causes of action with respect to the contracts or leases listed on the Cure Notice.

28.     Within five (5) business days after the entry of this Order, or as soon thereafter as is practicable, the Debtors shall file with this Court and serve the Cure Notice on each counterparty to an executory contract or unexpired lease related to the Assets, which Cure Notice shall: (i) state the cure amounts, if any, that the Debtors believe are necessary to assume such contracts or leases pursuant to section 365 of the Bankruptcy Code (the "Cure Amount"); (ii) notify the non-debtor counterparty that such party's contract or lease may be assumed and assigned to a Successful Bidder of the Assets at the conclusion of the Auction; (iii) state the date of the Sale Hearing and that objections to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing, or at a later hearing, as determined by the Debtors; and (iv) state the deadline by which the non-debtor counterparty shall

14

file an objection to the Cure Amount(s) or to the assumption and assignment of the applicable contract(s) and/or lease(s).

29. Any objection to the Cure Amount or the assumption and assignment of the applicable contract(s) and/or lease(s) (exclusive of the Successful Bidder's adequate assurance of future performance which any such objection shall be filed by the Sale Objection Deadline) must be filed with the Clerk and served on the Consultation Parties so as to be received on or before **January 23, 2026** (the "Cure Objection Deadline"). Any such objection must also state (i) the basis for such objection and (ii) with specificity what Cure Amount(s) the non-debtor counterparty to the relevant executory contract(s) or unexpired lease(s) believes is required (in all cases with appropriate documentation in support thereof).

30. Any objection solely to the Cure Amount(s) may not prevent or delay the Debtors' assumption and assignment of assumed and assigned contract(s) or lease(s). If a party objects solely to Cure Amount(s), the Debtors may, with the consent of the relevant Successful Bidder, hold the claimed Cure Amount(s) in reserve pending further order of the Court or mutual agreement of the parties. So long as the Cure Amount(s) are held in reserve, and there are no other unresolved objections to assumption and assignment of the applicable assumed and assigned contract(s) or lease(s), the Debtors can, without further delay, assume and assign such contract(s) or lease(s) to the applicable Successful Bidder. Under such

15

circumstances, the objecting non-debtor counterparty's recourse is limited to the funds held in reserve.

31. If no objection to the Cure Amount(s) is timely received, the Cure Amount(s) set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any assigned contract(s) or lease(s) or other document(s) as of the date of the Cure Notice.

**b.    Designation of Contracts/Leases and Adequate Assurance of Future Performance**

32. As soon as reasonably practicable after receiving the schedule from each Qualified Bidder of those executory contracts or unexpired leases it wishes to assume (the "Buyer Designated Contracts"), and no later than two (2) business days prior to the Auction, the Debtors shall file such schedule with the Clerk of the Bankruptcy Court. As soon as reasonably practicable after receiving the schedule from each Qualified Bidder of those executory contracts or unexpired leases it wishes to assume and have assigned to it, if any, and no later than February 23, 2026, the Debtors shall provide evidence to each executory contract or unexpired lease counterparty that each Qualified Bidder has the ability to comply with the requirements of adequate assurance of future performance; provided that any such evidence that constitutes nonpublic information shall be provided on a confidential basis. All Qualified Bidders are deemed to consent to the transmission of such evidence of adequate assurances of future performance on a confidential basis to

16

counsel for the applicable executory contract or unexpired lease counterparties via email with such information to be used only for purpose of assessing the applicable Qualified Bidder.

33. To the extent that any non-debtor counterparty wishes to object to the adequate assurance of future performance by the Buyer or another Qualified Bidder under the applicable executory contract(s) or unexpired lease(s), then such non-debtor counterparty shall file a written objection with the Court and serve on the Consultation Parties and the applicable Qualified Bidder(s) so that such objection is received on or before the Sale Objection Deadline.

34. To the extent that any non-debtor counterparty does not timely file and serve an objection as set forth above, such counterparty will be: (i) deemed to have consented to the Cure Amount(s), if any, set forth in the Cure Notice; (ii) barred, estopped, and enjoined from asserting any additional Cure Amount(s) under the assumed and assigned executory contract(s) or unexpired lease(s); (iii) barred from objecting to the assumption and assignment of the applicable assumed and assigned executory contract(s) or unexpired lease(s) to the Successful Bidder; and (iv) barred from objecting to adequate assurance of future performance by the Successful Bidder.

**Related Relief**

17

35. The Debtors are hereby authorized and empowered to take such actions as may be reasonably necessary to implement and effect the terms and requirements established by this Order.

36. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

37. The Debtors are authorized to proceed with the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

38. This Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustees or other fiduciary appointed for the Debtors' estates.

39. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7052, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

40. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

18

# EXHIBIT 2
## ASSET PURCHASE AGREEMENT

# EXHIBIT 3
# BID PROCEDURES

# BIDDING PROCEDURES[1]

LMD Holdings, LLC and Luca Mariano Distillery, LLC (collectively, the "Debtors"), debtors and debtors in possession in chapter 11 cases pending in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"), jointly administered in Case No. 25-47214 (the "Chapter 11 Case"), has sought approval (the "Motion") of, among other things, certain procedures through which it will, in consultation with the Consultation Parties (as defined below) determine the highest or otherwise best offer for the sale of substantially all of their assets (collectively, the "Assets").

As referenced in the Motion, an asset purchase agreement (including all exhibits, schedules and ancillary agreements related thereto, and as amended and in effect, the "APA") has been approved by the Bankruptcy Court, which APA contemplates a sale of the Assets to a buyer (the "Buyer"), on the terms and subject to the conditions provided therein. A copy of the APA is attached as **Exhibit 2** to the Motion.

On January **, 2026, the Bankruptcy Court entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to determine the highest or otherwise best offer for the Assets through the process and procedures set forth herein (the "Bidding Procedures").

## Assets to Be Sold

A party may participate in the bidding process by submitting a Bid (as defined below) for substantially all of the Assets. Bidders who intend to submit a Bid for the Assets should reference the APA in connection with such Bid.

All of the Debtors' right, title, and interest in and to the Assets subject thereto shall be sold free and clear of any claim, lien, encumbrance or interest, with such claims, liens, encumbrances or interests to attach to the proceeds of the sale of the Assets with the same validity and priority as such claims, liens, encumbrances or interests applied against the Assets.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**Submission to the Debtors & Consultation Parties**

All submissions to the Debtors required or permitted to be made under these Bidding Procedures must be directed to each of the following persons or entities unless otherwise provided:

1.1.   Debtors' Counsel:  Stevenson & Bullock, P.L.C.
Attn.: Elliot G. Crowder
26100 American Dr., Ste. 500
Southfield, MI 48034
ecrowder@sbplclaw.com

and

Robert N. Bassel
P.O. Box T
Clinton Township, MI 49236
bbassel@gmail.com

1.2.   Debtors' CRO:   David M. Baker
Aurora Management Partners
112 South Tryon St., Ste. 1770
Charlotte, NC 28284
dbaker@auroramp.com

1.3.   Counsel to any statutory committee appointed in the Chapter 11 Case.

"Consultation Party" means, collectively, SummitBridge National Investments VIII LLC ("SummitBridge"), Farm Credit Leasing Services Corporation, Farm Credit Mid-America and any statutory committee appointed in these cases; provided, however, that to the extent any of the foregoing parties submit a Bid (including a Credit Bid that is either revocable or subject to amendment) for any Assets, they shall not be a Consultation Party with respect to the evaluation and qualification of competing Bids for the Assets included in such party's Bid, or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes as set forth in the Bidding Procedures and the Bidding Procedures Order.

2

The Debtors shall consult with the Consultation Parties (which may be, for the avoidance of doubt, through their advisors) in good faith regarding the sale process for the Assets and the Sale, including evaluation of any and all bids, scheduling and operation of the Auction (if applicable), selection of winning bids, negotiation of purchase agreements, and any modifications of the Bidding Procedures.

## Bidding Process

The Debtors (after consultation with the Consultation Parties) shall, subject to the other provisions of these Bidding Procedures: (a) determine whether any person is a Qualified Bidder (as defined below), (b) coordinate the efforts of Potential Bidders (as defined below) in conducting their due diligence investigations, (c) receive offers from Bidders, and (d) negotiate any offers made to purchase the Assets.

## Key Dates and Deadlines[2]

| EVENT | DATE |
|---|---|
| Deadline to file Cure Notice | **Three (3) business days after entry of the Bidding Procedures Order or as soon as practicable thereafter** |
| Deadline to objection to Cure Notice | **January 23, 2026** |
| Stalking Horse Selection Date | **January 30, 2026** |
| Deadline to file Stalking Horse Notice | **February 3, 2026** |
| Bid Deadline | **February 20, 2026 at 4:00 PM ET** |
| Auction to be held if Debtors receive more than one Qualified Bid | **February 25, 2026 at 10:00 AM ET** |

---

[2] These dates are subject to extension or adjournment as provided for herein.

3

| Deadline to file objections to Sale and Successful Bidder's Adequate Assurance of Future Performance | **February 26, 2026** |
|---|---|
| Sale Hearing | **March 3, 2026** |
| Outside Closing Date | **March 18, 2026** |

**Potential Bidders and Due Diligence**

To participate in the bidding process and to receive access to due diligence materials (the "Diligence Materials"), a party must submit to the Debtor: (i) an executed nondisclosure agreement acceptable to the Debtors in substantially the form attached as **Exhibit 4** to the Motion.

Parties interested in purchasing the Assets may obtain due diligence materials regarding the Assets from Debtors' Chief Restructuring Officer, David Baker of Aurora Capital Partners ("Aurora"). Interested parties must execute a form nondisclosure agreement acceptable to Debtors ("NDA") before any due diligence materials will be provided. Parties that have previously executed an NDA do not need to execute a new NDA. All due diligence requests should be directed to the Debtors' CRO. Debtors and Aurora will comply with reasonable due diligence requests made by interested parties, and all due diligence must be completed before the Auction

A party who qualifies for access to Diligence Materials shall be a "Potential Bidder." The Debtors will afford any Potential Bidder the time and opportunity to conduct reasonable due diligence; provided, however, that the Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline to any party that has not submitted a Qualified Bid (as defined below) and may, after consulting with the Consultation Parties, limit the amount of further due diligence available to Qualified Bidders after the Bid Deadline.

The Debtors reserve the right to withhold any Diligence Materials that the Debtors, after consulting with the Consultation Parties, determines are business-sensitive or otherwise not appropriate for disclosure to a Potential Bidder. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder.

4

Each Potential Bidder and each Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder or Bidder, as applicable, and its contemplated transaction. Failure by a Potential Bidder or Bidder (other than the Buyer) to comply with requests for additional information and due diligence access may be a basis for the Debtors to determine that such Bidder is not a Qualified Bidder.

## Selection of a Stalking Horse Bidder

By no later than January 30, 2026 (the "Stalking Horse Selection Date"), Debtors, in consultation with their professionals, may elect to select a Stalking Horse Bidder that, in the opinion of Debtors, is the highest and best available offer received in connection with the Sale of some or all of the Assets. Any offer to purchase by a Stalking Horse Bidder ("Stalking Horse Bid") will be published in Debtors' data room and a copy of any Stalking Horse Bid will be filed with the Court. Any Stalking Horse Bid will be the baseline against which Qualified Bids (defined below) are evaluated.

To induce Qualified Bidders (defined below) to submit bids before the Stalking Horse Selection Date, Debtors may provide any Stalking Horse Bidder with a break-up fee and expense reimbursement in the aggregate amount equal to no more than $100,000 of actual and documented expenses incurred, including legal and professional fees ("Stalking Horse Bid Protections").

If Debtors are unable to secure a Stalking Horse Bid, Debtors will file a notice with the Court on the Stalking Horse Selection Date stating that no Stalking Horse Bid has been selected and that Debtors will proceed to seek approval of a Sale to the overall highest and best offer for the Assets that is received by Debtors pursuant to the Bidding Procedures.

## Bid Requirements

To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (other than the Buyer) (each, a "Bidder"), must satisfy each of the following conditions (the "Bid Requirements"):

(a) **Good Faith Deposit**: Each Bid must be accompanied by a cash deposit in the amount of ten percent (10%) of the Purchase Price (as defined below) (excluding any Assumed Liabilities) contained in the

5

APA, which deposit shall be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Good Faith Deposit"); provided, however, that the Debtors, in their business judgment and in consultation with the Consultation Parties, may elect to waive or modify the requirement of a Good Faith Deposit on a case by case basis. Each credit bid must also be accompanied by the Good Faith Deposit to the extent of any cash component of such credit bid, subject to the waiver or modification described in the previous sentence.

(b) **Better Terms**: In connection with any Bid for the Assets, such Bid must be on terms that the Debtors, in their business judgment and after consulting with the Consultation Parties, determine are substantially similar to or better than the terms and conditions contained in the APA or, if a Stalking Horse Bid has been secured, the Stalking Horse Bidder's Asset Purchase Agreement.

(c) **Purchase Price.** Each Bid must (a) clearly specify the purchase price to be paid, assuming a purchase of the applicable Assets and assumption of the Assumed Liabilities (the "Purchase Price"), (b) identify separately any cash and non-cash components of the Purchase Price in United States Dollars, and (c) indicate the allocation of the Purchase Price among the applicable Assets. The Purchase Price must be in U.S. Dollars for the applicable Assets on a cash-free, debt-free basis. Any Bid for substantially all of the Assets must also include a statement as to whether the Bid is conditioned on purchasing all Assets or whether the Qualified Bid should be viewed as a separate Bid for one or more sets of Assets. The Debtors reserve the right to ask any Bidder to allocate the value ascribed to a Bid for any particular Asset and to inquire about any significant assumptions on which such valuations are based; *provided* that, for the avoidance of doubt, the Debtors may, in their sole discretion, determine that the failure to provide such information constitutes a failure to comply with the Bid Requirements.

(d) **Executed Agreement**: Each Bid must be based on the APA, and must include binding, executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate an Alternate Transaction. A Bid must also include a copy of the counter APA (including all exhibits thereto)

6

marked against the APA, to show all changes requested by the Bidder (including those related to purchase price and to remove any provisions that apply only to the Buyer, such as the Bid Protections contained in the APA.

(e) **Scope of Bid**: A Bid must be for all or substantially all of the Assets.

(f) **Designation of Assigned Contracts and Leases**: A Bid must identify the executory contracts and unexpired leases with respect to which the Bidder seeks assignment from the Debtors. Each Bid must be accompanied by evidence of the applicable Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of future performance under all Assigned Contracts, which shall include the proposed assignee and any guarantors, as applicable.

(g) **Designation of Assumed Liabilities**: A Bid must identify all liabilities which the Bidder proposes to assume.

(h) **Corporate Authority**: A Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Alternate Transaction, as applicable; provided that, if the Bidder is an entity specially formed for the purpose of effectuating the Alternate Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Alternate Transaction, as applicable, by the ultimate equity holder(s) of such Bidder.

(i) **Disclosure of Identity of Bidder**: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets, including any ultimate equity holders in the case of a Bidder which is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid. A Bid must also fully disclose any connections or agreements with the Debtors, the Buyer or any other known, potential, prospective Bidder or Qualified Bidder, and/or any officer, director, or equity security holder of the Debtors.

7

(j) **<u>Proof of Financial Ability to Perform</u>**: A Bid must include written evidence that the Debtors may conclude, in consultation with its advisors and after consulting with the Consultation Parties, demonstrates that the Bidder has the necessary financial ability to close the Alternate Transaction, as applicable, and comply with section 365 of the Bankruptcy Code, including providing adequate assurance of future performance under all contracts to be assumed and assigned in such Alternate Transaction. Such information must include, *inter alia*, the following:

(1) contact names and numbers for verification of non-contingent financing sources;

(2) evidence of the Bidder's internal resources and proof of unconditional debt funding commitments from a recognized banking institution and, if applicable, unconditional equity commitments in an aggregate amount equal to the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of the cash portion of such Bid, in each case, as are needed to close such Alternate Transaction; and

(3) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, after consulting with the Consultation Parties, demonstrating that such Bidder has the ability to close the Alternate Transaction.

(k) **<u>Regulatory and Third Party Approvals</u>**: A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Alternate Transaction, and the time period within which the Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the counter APA, those actions the Bidder will take to ensure receipt of such approval(s) as promptly as possible).

8

(l) **Contact Information and Affiliates**: A Bid must provide the identity and contact information for the Bidder.

(m) **Contingencies**: Each Bid (i) may not contain representations and warranties, covenants, or termination rights materially more onerous in the aggregate to the Debtors than those set forth in the APA, as determined by the Debtors in good faith, and (ii) may not be conditioned on obtaining financing, any internal approvals or credit committee approvals, or on the outcome or review of due diligence, including with respect to any Environmental Laws, or employee, labor, health and/or safety matters.

(n) **Irrevocable**: Each Bid must be irrevocable until five (5) business days after the Sale Hearing; provided that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable until the closing of the Sale.

(o) **Compliance with Diligence Requests**: The Bidder submitting the Bid must have complied with all requests for additional information and due diligence access from the Debtors to the reasonable satisfaction of the Debtors, in consultation with the Consultation Parties.

(p) **Nondisclosure Agreement**: To the extent not already executed, the Bid must include an executed NDA in substantially the form attached as **Exhibit 4** to the Motion.

(q) **Termination Fees**: The Bid (other than the Stalking Horse Bid pursuant to the APA) must not entitle the Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and, by submitting the Bid, the Bidder waives the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or participation in any Auction.

(r) **Closing Date**: The Bid must include a commitment to close the transactions contemplated by the counter APA by no later than March 18, 2026.

9

(s) **Compliance with Bidding Procedures.** Each Bid must contain a covenant that the applicable Potential Bidder will comply with the terms of the Bidding Procedures and the Order.

(t) **Consent to Jurisdiction**. Each Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale, and the construction and enforcement of these Bidding Procedures, any written indications of interest, preliminary bid documents, the Bids, the bid documents, and any and all other agreements entered into in connection with any proposed Sale, the Closing, and any other related matter.

### Bid Deadline

Any Bid with regard to a Sale must be transmitted via email (in .pdf or similar format) to the Debtors, their counsel, and the CRO so as to be **actually received by such parties** on or before **February 20, 2026 by 4:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

The Debtors shall promptly provide to the Consultation Parties copies of all Bids received by the Debtors, but in no event later than the next business day following receipt.

### Qualified Bids and Qualified Bidders

A Bid received from a Bidder before the Bid Deadline that meets all of the above requirements shall constitute a "Qualified Bid" and such Bidder shall constitute a "Qualified Bidder"; provided that any Stalking Horse Bid and any bid received by SummitBridge, in its capacity as the DIP Lender and Pre-Petition Lender, shall constitute and be deemed each a Qualified Bid and not subject to the Bid Requirements. For the avoidance of doubt, SummitBridge shall be deemed a Qualified Bidder and not subject to the Bid Requirements. Any amendments, supplements, or other modifications to any Bids (including pursuant to this paragraph) prior to the Bid Deadline shall be delivered to the Debtor and the Consultation Parties and may not be submitted after the Bid Deadline. All Qualified Bids will be considered, but the Debtor reserves its right to reject any or all bids (other than the Buyer's). Additionally, notwithstanding anything herein to the contrary, The Debtors shall inform counsel to any Stalking Horse Bidder, the Consultation Parties, and any Qualified Bidders whether the Debtors considers any

10

Bid to be a Qualified Bid as soon as practicable but no event later than one (1) business day before the Auction.

Each Qualified Bidder, by submitting a Bid, shall be deemed to acknowledge and agree that it is not relying upon any written or oral statements, representations, promises, warranties, or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party, including the Debtors and their agents and representatives (other than as may be set forth in a definitive agreement executed by the Debtors), regarding the Debtors, any of the Assets, the Auction, these Bidding Procedures or any information provided in connection therewith.

## Credit Bid

Subject to section 363(k) of the Bankruptcy Code, any Qualified Bidder that has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Party") shall be entitled to credit bid all or a portion of the face value of such Secured Party's claims against the Debtors toward the Purchase Price specified in such Qualified Bidder's Bid, to the extent permitted by applicable law, any other Bankruptcy Court orders and the documentation governing the Debtors' secured debt. For the avoidance of doubt, SummitBridge National Investments VIII LLC, in its capacity as the DIP Lender and Pre-Petition Lender, is a Secured Party and shall have the right to credit bid up to the full amount of the applicable outstanding obligations owed to it by the Debtors in any bulk or piecemeal sale of all, substantially all, or any portion of the Assets constituting its collateral.

The rights and defenses of the Debtors and any other party in interest with respect to whether any assertion that any liens, claims, encumbrances, or interests, if any, will attach to the proceeds of the Sale are expressly preserved.

## Auction

If one or more Qualified Bids (other than the APA) are submitted by the Bid Deadline, the Debtors will conduct an auction (the "Auction") at 10:00 A.M. (Eastern Time) on February 25, 2026 at the offices of Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MI 48034 to determine the highest or otherwise best Qualified Bid with respect to the Assets. This determination shall take into account any factors the Debtors, after consulting with the Consultation Parties, reasonably deems relevant to the value of the Qualified Bid to the Debtors' estates

11

and may include, but are not limited to, the following: (i) the amount and nature of the consideration, including any assumed liabilities; (ii) the number, type and nature of any modifications to the APA requested by each Bidder in such Bidder's counter APA; (iii) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtors of such modifications or delay; (iv) the total consideration to be received by the Debtor; (v) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (vi) the net benefit to the Debtors' estates (collectively, the "Bid Assessment Criteria").

Only the Debtors, the Consultation Parties, the Buyer, a representative from the Office of the United States Trustee, and any other Qualified Bidder, in each case, along with their representatives and counsel, may attend the Auction (such attendance to be in person) and only Qualified Bidders will be entitled to make any Bids at the Auction.

The Debtors and their advisors shall direct and preside over the Auction and the Auction shall be transcribed. Other than as expressly set forth herein, the Debtors (after consulting with the Consultation Parties) may conduct the Auction in the manner it reasonably determines will result in the highest or otherwise best purchase price for the Assets.

One (1) day prior to the Auction, the Debtors will:

(i)     notify each Qualified Bidder that has timely submitted a Qualified Bid that its Bid is a Qualified Bid; and

(ii)    provide each Qualified Bidder participating in the Auction with a copy of the counter APA(s) associated with all Qualified Bids and an indication as to which Qualified Bid is the highest or otherwise best Qualified Bid with respect to the Assets, as determined by the Debtor after consulting with the Consultation Parties, received before the Bid Deadline (the "Auction Baseline Bid").

In addition, at the start of the Auction, the Debtors shall describe the terms of the Auction Baseline Bid. Each Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands, and accepts the Bidding Procedures, and (c) has consented to the core jurisdiction of the Bankruptcy Court.

12

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a) **Minimum Overbid Increments**: Any Overbid for all or substantially all of the Assets, after and above the Auction Baseline Bid, shall be made in increments valued at not less than $200,000 (or such other amount as shall be announced at the Auction by the Debtors after consulting with the Consultation Parties) in cash or in cash equivalents, or other forms of consideration acceptable to the Debtors. For the purposes of this section and for determining the Successful Bidder and the Backup Bidder, the full amount of the Bid Protections shall be added and credited to any Overbid submitted by the Stalking Horse.

(b) **Secured Creditors May Credit Bid**: Secured creditors with allowed secured claims shall be entitled to submit Bids or Overbids in cash, cash equivalents or other forms of consideration, as described above, or credit bid amounts up to the aggregate amount of their Claim.

(c) **Remaining Terms Are the Same as for Qualified Bids**: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the APA in connection therewith. Any Overbid must remain open and binding on the Bidder as provided herein.

At the Debtors' discretion, to the extent not previously provided (which shall be determined by the Debtors after consulting with the Consultation Parties), a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, after consulting with the Consultation Parties) demonstrating such Bidder's ability, not contingent on any financing or equity funding contingencies whatsoever, to close the Alternate Transaction proposed by such Overbid.

13

(d) **Announcement of Overbids**: The Debtors shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each such Overbid, and the basis for calculating such total consideration.

All Qualified Bidders (including the Buyer) at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the marketing process, the Auction, and the construction and enforcement of the Qualified Bidder's fully executed sale and transaction documents, as applicable.

The Debtors (after consulting with the Consultation Parties) may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bidding Procedures or the APA. Any Auction rules adopted by the Debtors will not modify any of the terms of the APA or the rights of the Buyer under the Bid Procedures (as may be consensually modified at the Auction) without the consent of the Buyer.

Except as otherwise provided in the APA, or any order by the Bankruptcy Court approving any Sale of the Assets as contemplated hereunder, the applicable Assets sold pursuant to the Bidding Procedures shall be conveyed at the closing of the purchase and sale in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED.**"

The Auction shall continue in additional rounds of bidding until the Debtors select, after consulting with the Consultation Parties, the Bid that is the highest or otherwise best offer for the Assets from among the Qualified Bids submitted at the Auction (each, a "Successful Bid," and the Bidder submitting such Successful Bid, a "Successful Bidder"). The Successful Bidder shall have the rights and responsibilities of the Buyer(s) as set forth in the APA. In selecting the Successful Bid, the Debtors shall consider the Bid Assessment Criteria. The Auction shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of its Successful Bid.

Promptly following the Debtors' selection, after consulting with the Consultation Parties, of the Successful Bid and the conclusion of the Auction, or if there are no Qualified Bids received prior to the deadline, the Debtors shall then

14

immediately file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Bid at the Auction with respect to the Assets, as determined by the Debtors, in the exercise of its business judgment and after consulting with the Consultation Parties, will be designated as the backup bidder (the "Backup Bidder"). The Backup Bidder shall be required to keep its initial Bid (or if such Backup Bidder submitted one or more Overbids at the Auction, the Backup Bidder's final Overbid) (the "Backup Bid") open and irrevocable until after the closing of the relevant transaction with the Successful Bidder. Notwithstanding anything to the contrary herein, with respect to the Stalking Horse, the Stalking Horse shall not be a Backup Bidder except at the option of the Stalking Horse.

Following the Sale Hearing, if the Successful Bidder fails to consummate the purchase of the Assets, the Debtors may, after consultation with the Consultation Parties, deem the Backup Bidder with respect to the Assets to have the new Successful Bid, and the Debtors will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with such Backup Bidder at the price of its last bid with respect to the Assets. The Debtors, on their behalf and on behalf of their estates, specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

For the avoidance of doubt, in the event that there is a Successful Bidder (other than the Buyer) with respect to all or substantially all of the Assets, and (at its option) the Buyer is the Backup Bidder, the Buyer will be deemed to be the Backup Bidder at the price of its last Overbid, less the full amount of the Bid Protections added and credited to any Overbid submitted by the Buyer, with respect to the Assets and will be subject to the terms contained in the immediately preceding paragraph.

### Bid Protections

Pursuant to the Bidding Procedures Order, the Stalking Horse Bidder is entitled to the Bid Protections in the amount set forth in, and in accordance with the terms of, the APA and the Bidding Procedures Order. Pursuant to the Bidding Procedures Order, except for the Stalking Horse Bidder, no other party submitting an offer or Bid or a Qualified Bid shall be entitled to any expense reimbursement,

break-up fee, termination fee, or similar fees or payments. The Bid Protections shall be paid immediately by the Debtors in the case of a default by the Debtors, or directly to Buyer on the Closing Date from the Purchase Price paid by the Successful Bidder if not the Buyer, and shall be deemed an allowed administrative expenses claim in favor of Buyer pursuant to Sections 503 and 507(a) of the Bankruptcy Code with priority over any other administrative expense claims against the Seller of any nature, notwithstanding anything to the contrary in any order of the Bankruptcy Court.

## Sale Hearing

The Successful Bid and the Backup Bid (or, if no Qualified Bid other than that of the Buyer is received, then the APA) will be subject to approval by the Bankruptcy Court. The sale hearing to approve each Successful Bid and any Backup Bid (or, the APA for the Assets, if no Qualified Bid other than that of the Buyer is received) shall take place on **March 3, 2026 at 11:00 a.m. (Eastern Time)** before the Bankruptcy Court (the "Sale Hearing"). The Sale Hearing may be adjourned by the Debtors, after consulting with the Consultation Parties, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of the Chapter 11 Case.

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' bankruptcy estates absent further order of the Bankruptcy Court or as expressly provided below. The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder, if any, shall be returned to such Backup Bidder no later than seventy-two (72) hours after the closing of the transaction with the Successful Bidder. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If a Successful Bidder timely closes on its winning transaction, its Good Faith Deposit shall be credited towards the purchase price. If a Successful Bidder (or Backup Bidder, if applicable) fails to consummate an Alternate Transaction because of a breach or failure to perform on the part of such Successful Bidder (or Backup Bidder, if applicable), the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder (or Backup Bidder, if

16

applicable), and such Good Faith Deposit shall irrevocably become property of the Debtors.

## Reservation of Rights of the Debtors

Except as otherwise provided in the APA, the Bidding Procedures, or the Bidding Procedures Order, the Debtors further reserve the right as they may reasonably determine to be in the best interest of the estate, after consulting with the Consultation Parties to: (a) determine which Bidder(s) is a Qualified Bidder(s); (b) determine which Bid(s) is a Qualified Bid(s); (c) determine which Qualified Bid is the highest or otherwise best proposal for the Assets and which is the next highest or otherwise best proposal for the Assets; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates.

Dated: January **, 2026

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Charles D. Bullock
Charles D. Bullock (P55550)
Elliot G. Crowder (P76137)
Ernest M. Hassan, III (P67815)
*Counsel for Luca Mariano Distillery, LLC*
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: cbullock@sbplclaw.com
Email: ecrowder@sbplclaw.com
Email: ehassan@sbplclaw.com

&

By: /s/ Robert N. Bassel
Robert N. Bassel (P48420)
*Counsel for LMD Holdings, LLC*
P.O. Box T
Clinton Township, MI 49236
Phone: (248) 677-1234

17

Email: bbassel@gmail.com

18

# EXHIBIT 4
# CONFIDENTIALITY AGREEMENT

<h1 style="text-align:center">CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT</h1>

This Confidentiality Agreement (this "Agreement") is dated as of _____, 2025, and is by and between Luca Mariano Distillery, LLC and LMD Holdings, LLC, (collectively the "Company") by and through the engaged Chief Restructuring Officer ("CRO"), Aurora Management Partners, LLC, and _____ _____ (the "Recipient").

1.    **Confidential Information; Representatives**.  The Company is interested in entering into a possible transaction involving the Recipient (the "Transaction"), and in order to assist the Recipient in evaluating the Transaction, the Company is prepared to make available to the Recipient certain confidential, non-public or proprietary information concerning the business, assets, operations, projections and finances of the Company, its affiliates and/or its related entities (any and all such information, provided to the Recipient before, on or after the date of this Agreement by or on behalf the Company, its affiliates and/or its related entities, regardless of the format of such information or manner in which such is provided, together with all notes, summaries, analysis, compilations, studies, interpretations, memoranda and other documents based thereon or extracts, copies and other reproductions is herein referred to as the "Confidential Information").  As a condition to the Confidential Information being furnished to the Recipient and its directors, officers, attorneys and consultants (collectively, "Representatives"), the Recipient agrees to treat the Confidential Information in accordance with the provisions of this Agreement and to take or abstain from taking certain other actions hereinafter set forth.

2.    **Excluded Information**.  The Confidential Information shall not include information that (i) is or becomes generally available to the public other than as a result of any disclosure resulting from an act or omission by the Recipient or any of its Representatives in violation of the terms of this Agreement, (ii) is or becomes lawfully known to the Recipient on a non-confidential basis from a source other than the Company or any of their respective affiliates or related entities or any of their respective representatives, provided that such source is not known to the Recipient, after due inquiry, to be subject to any contractual, legal, fiduciary or other obligation of confidentiality with respect to such information, (iii) is within the possession of the Recipient or any of its Representatives prior to being furnished to the Recipient pursuant hereto,  (iv) is independently developed by Recipient or any of its Representatives without the use of the Confidential Information, or (v) is required to be disclosed pursuant to any law or regulation or any judicial, administrative of governmental proceeding.

3.    **Non-Disclosure of Confidential Information**.  The Recipient and its Representatives shall use the Confidential Information **solely** for the purpose of evaluating the Transaction and for no other purpose whatsoever. **For the sake of clarity, Recipient shall not be permitted to use the Confidential Information obtained through this Agreement in any current or future litigation with the Company and/or its officers, members, employees, agents, professionals and affiliates, or in connection with Company's assets, except to the extent independently obtained or developed from another source other than the Company.** The Recipient shall keep the Confidential Information in strict confidence and shall not disclose any of the Confidential Information in any manner whatsoever; provided, however, that (i) the Recipient may make any disclosure of information contained in the Confidential Information to which the Company gives its prior written consent, and (ii) any information contained in the Confidential Information may be disclosed to the Recipient's Representatives who (a) need to know such information for the purpose of evaluating the Transaction, (b) have been informed by the Recipient of the confidential nature of such information and the existence and terms of this Agreement and (c) agree to act in accordance with the terms and conditions of this Agreement to the same extent as if they were a party hereto.  The Recipient shall be liable for any breach or other violation of this Agreement by any of its Representatives as if the Recipient had committed such breach or other violation.

4.    **Non-Disclosure of Existence of Negotiations**.  Without the prior written consent of the Company, or unless required by applicable law or regulation (and then only after compliance, if applicable, with paragraph 6 below), neither the Recipient nor any person or entity acting on its behalf shall disclose to any other person that it has received the Confidential Information or that discussions or negotiations are taking place between the parties concerning a possible Transaction, including the status of such discussions or negotiations.

5.    **Return of Confidential Information**.  At anytime upon the written request of the Company, the Recipient shall (i) destroy all notes, summaries, analysis, compilations, studies, interpretations, memoranda and other documents prepared by the Recipient or its Representatives that contain or reflect the Confidential Information and (ii) return to

the Company or destroy all Confidential Information, including any copies in the possession of Recipients of its Representatives.  If requested by the Company, the Recipient shall promptly confirm its compliance with this paragraph to the Company in writing.  Notwithstanding the foregoing, neither Recipient nor Recipient's Representatives shall be required to return or destroy (i) any computer records or files containing Confidential Information that have been created pursuant to automatic archiving or back-up procedures or (ii) any Confidential Information to the extent Recipient or any such Representative (as applicable) is required to retain Confidential Information to comply with applicable law, rule, regulation, legal process or established document retention policy.

6. **Subpoena or Court Order**.  In the event that the Recipient or anyone to whom it discloses the Confidential Information receives a request to disclose all or any part of the Confidential Information or the information described in paragraph 4 above under the terms of a subpoena or other order issued by a court of competent jurisdiction or by another governmental agency, the Recipient shall (i) promptly notify the Company of the existence, terms and circumstances surrounding such a request, (ii) consult with the Company on the advisability of taking steps to resist or narrow such request, (iii) if disclosure of such Confidential Information or the information described in paragraph 4 above is required, furnish only such portion of the Confidential Information or the information described in paragraph 4 above as the Recipient is advised by its legal counsel is legally required to be disclosed, and (iv) reasonably cooperate with the Company in its efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to such portion of the Confidential Information or the information described in paragraph 4 above that is required to be disclosed.

7. **Disclaimer of Warranty**.  None of the Company, its affiliates or related entities, nor any of their respective directors, officers, employees, agents or other representatives (including, without limitation, Aurora Management Partners, Inc and its representatives) has made or makes any representation or warranty as to the accuracy or completeness of the Confidential Information.  The Recipient agrees that none of the Company, its affiliates or related entities, nor any of their respective directors, officers, employees, agents or other representatives shall have any liability to the Recipient or any of its Representatives resulting directly or indirectly from the Recipient's use of the Confidential Information or the use of the Confidential Information by the Recipient's Representatives.

8. **Property Rights**.  All Confidential Information disclosed by or on behalf of the Company, its affiliates and/or related entities, to the Recipient or its Representatives shall remain the property of the Company, its affiliates and/or related entities, as applicable.  No licenses or rights under any patent, copyright, trademark, trade name, trade secret or other intellectual property are granted to the Recipient or any of its Representatives, or are to be implied by reason of this Agreement.

9. **Definitive Agreement**.  Unless and until a definitive written agreement between the Company and the Recipient with respect to a Transaction has been executed and delivered, neither the Company nor the Recipient will be under any legal obligation of any kind whatsoever with respect to such a Transaction by virtue of this or any other written or oral expression by either of them or their Representatives except, in the case of this Agreement, for the matters specifically agreed to herein.

10. **Remedies**.  The Recipient acknowledges that in the event of any breach of this Agreement, the Company would be irreparably damaged and could not be made whole by monetary damages.  Accordingly, the Company, in addition to any other remedy to which it may be entitled in law or in equity, shall be entitled to seek an injunction to prevent breaches of this Agreement, and to seek an order compelling specific performance of this Agreement, without the necessity of posting bond or other security.  The non-prevailing party in any such action shall reimburse the prevailing party for all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party.

11. **Entire Agreement; Amendments.**  This Agreement represents the entire understanding and agreement of the parties hereto with respect to the matters contained herein, and may be amended, modified or waived only by a separate writing executed by the Company and the Recipient expressly so amending, modifying or waiving this Agreement.

12. **No Waiver**.  No failure or delay by the Company in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

13. **Governing Law**. This Agreement shall be governed and construed in accordance with the laws of the State of Michigan, United States of America and the United States Bankruptcy Code, where applicable, without regard to the laws of conflict of laws. Any and all disputes regarding this Agreement shall be brought before ethe United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, in case number 25-47214.

14. **Captions; Counterparts; Term**. The Captions contained in this Agreement are for convenience only and shall not affect the construction or interpretation of any provisions of this Agreement. This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same Agreement, and may be delivered by facsimile or other reliable electronic means. This Agreement shall terminate and be of no further force or effect **one year** from and after the date hereof, provided that, without limiting the Recipient's other obligations contained herein, the obligations set forth herein shall continue with respect to any Confidential Information not returned or destroyed in accordance with paragraph 5 hereof.

*[Remainder of Page Intentionally Left Blank]*

**IN WITNESS WHEREOF, THIS AGREEMENT** is executed and delivered effective as of the date first written above.

**Company:**

Luca Mariano Distillery, LLC and LMD Holdings, LLC through their role as CRO, Aurora Management Partners, LLC

_____

Name:  _____

Title:  _____

**Recipient:**

Company: _____

By:  _____

Name:  _____

Title:  _____

Email:  _____

Phone: _____

Address line 1: _____

Address line 2: _____

*Signature Page to Confidentiality Agreement*

# EXHIBIT 5
# SALE NOTICE

1

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: | |
| | Case No. 25-47214 |
| LMD Holdings, LLC, *et ano*.,[1] | Chapter 11 |
| | Hon. Paul R. Hage |
| Debtors. | |
| | (Jointly Administered) |

## NOTICE OF BIDDING PROCEDURES, AUCTION DATE, <u>AND SALE HEARING</u>

**PLEASE TAKE NOTICE THAT:**

1.       On December 18, 2025, LMD Holdings, LLC and Luca Mariano Distillery, LLC (collectively the "<u>Debtors</u>") filed the Motion (the "<u>Motion</u>") for Entry of (A) Order (I) Establishing Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially All of Debtors' Assets, (III) Setting Certain Dates and Deadlines in Connection Therewith, (IV) Approving the Form of the Asset Purchase Agreement, Including the Stalking Horse Bid Protections, and (V) Granting Related Relief; (B) Order (I) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances; and (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Certain Related Relief.[2]  By the Motion, the Debtors seek, *inter alia*, to sell (the "<u>Sale</u>") substantially all of its assets (the "<u>Assets</u>") and to assume and assign certain executory contracts and unexpired leases (the "<u>Purchased Contracts</u>") to any stalking horse bidder or successful purchaser (the "<u>Buyer</u>") pursuant to an asset purchase agreement (the "<u>APA</u>"), subject to higher or otherwise better offers, and/or the Successful Bidder at the Auction.

2.       On January **, 2026, pursuant to the Motion, the Court entered an Order (the "<u>Bidding Procedures Order</u>") approving auction and bidding procedures (the "<u>Bidding Procedures</u>") in connection with the proposed Sale.  A copy of the

---

[1] The Debtors in these jointly administered proceedings are LMD Holdings, LLC (Case No. 25-47214) and Luca Mariano Distillery, LLC (Case No. 25-51472).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Motion, the Bidding Procedures Order and the Bidding Procedures can be obtained from counsel to the Debtors, Stevenson & Bullock, P.L.C., Attn: Elliot Crowder, 26100 American Drive, Suite 500, Southfield, MI 48034 (ecrowder@sbplclaw.com) and Robert N. Bassel, P.O. Box T, Clinton Township, MI 49236 (bbassel@gmail.com).

3.　　　The Auction shall take place on **\*\* at 10:00 AM (Eastern Time)** at the offices of Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MI 48034.

4.　　　A hearing to approve the Sale (the "Sale Hearing"), including the assumption and assignment of certain Purchased Contracts, will be held on **\*\* at 11:00 AM (Eastern Time)**, at the United States Bankruptcy Court for the Eastern District of Michigan, 211 W. Fort St., Detroit, Michigan 48226, before the Honorable Paul R. Hage. The Sale Hearing may be adjourned by the Debtor, after consulting with the Consultation Parties, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of the Debtors' chapter 11 bankruptcy cases.

5.　　　Pursuant to the Bidding Procedures Order, any objections to the Sale ("Sale Objections") must be set forth in writing and must state with particularity the grounds for such objections or other statements of position. Sale Objections must be filed with the Clerk of the Bankruptcy Court and served on (a) counsel to the Debtors, Stevenson & Bullock, PLC, Attn: Elliot Crowder, 26100 American Drive, Suite 500, Southfield, MI 48034 and Robert N. Bassel, P.O. Box T, Clinton Township, MI 49236; (b) counsel to SummitBridge National Investments VIII LLC, Frost Brown Todd LLP, Attention: Ronald E. Gold, 3300 Great American Tower, 301 East 4th Street, Cincinnati, Ohio 45202, (c) counsel to Farm Credit Leasing Services Corporation, Warner Norcross + Judd LP, Attn: Elisabeth M. Von Eitzen, 180 E Water Street, Ste. 7000, Kalamazoo, MI 49007, and (d) counsel to Farm Credit Mid-America, Dentons, Attn: James R. Irving, 101 South Fifth Street, Louisville, KY 40202 (collectively, the "Consultation Parties") by **February 26, 2026 (the "Sale Objection Deadline")**. UNLESS AN OBJECTION IS TIMELY FILED BY THE SALE OBJECTION DEADLINE AND SERVED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT AND THE COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.

6.	This Notice is subject to the fuller terms and conditions of the Motion and the Bidding Procedures Order, which shall control in the event of any conflict, and the Debtor encourages parties-in-interest to review such documents in their entirety.

7.	Copies of the Motion, the Bidding Procedures Order, the Bidding Procedures, and the form APA, are available from counsel to the Debtors, Stevenson & Bullock, P.L.C., Attn: Elliot Crowder, 26100 American Drive, Suite 500, Southfield, MI 48034 (ecrowder@sbplclaw.com) and Robert N. Bassel, P.O. Box T, Clinton Township, MI 49236 (bbassel@gmail.com).

Dated: December **, 2025

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Charles D. Bullock
Charles D. Bullock (P55550)
Elliot G. Crowder (P76137)
Ernest M. Hassan, III (P67815)
*Counsel for Luca Mariano Distillery, LLC*
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: cbullock@sbplclaw.com
Email: ecrowder@sbplclaw.com
Email: ehassan@sbplclaw.com

&

By: /s/ Robert N. Bassel
Robert N. Bassel (P48420)
*Counsel for LMD Holdings, LLC*
P.O. Box T
Clinton Township, MI 49236
Phone: (248) 677-1234
Email: bbassel@gmail.com

3

# EXHIBIT 6
# CURE NOTICE

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

LMD Holdings, LLC, *et ano*.,[1]

      Debtors.

Case No. 25-47214
Chapter 11
Hon. Paul R. Hage

(Jointly Administered)

---

## NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND PROPOSED CURE AMOUNTS

1.      On December 18, 2025, LMD Holdings, LLC and Luca Mariano Distillery, LLC (collectively the "Debtors") filed the Motion (the "Motion") for Entry of (A) Order (I) Establishing Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially All of Debtors' Assets, (III) Setting Certain Dates and Deadlines in Connection Therewith, (IV) Approving the Form of the Asset Purchase Agreement, Including the Stalking Horse Bid Protections, and (V) Granting Related Relief; (B) Order (I) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances; and (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Certain Related Relief.[2]  By the Motion, the Debtors seek, *inter alia*, to sell (the "Sale") substantially all of its assets (the "Assets") and to assume and assign certain executory contracts and unexpired leases (the "Purchased Contracts") to any stalking horse bidder or successful purchaser (the "Buyer") pursuant to an asset purchase agreement (the "APA"), subject to higher or otherwise better offers, and/or the Successful Bidder at the Auction.

2.      On January **, 2026, pursuant to the Motion, the Court entered an Order (the "Bidding Procedures Order") approving auction and bidding procedures

---

[1] The Debtors in these jointly administered proceedings are LMD Holdings, LLC (Case No. 25-47214) and Luca Mariano Distillery, LLC (Case No. 25-51472).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(the "Bidding Procedures") in connection with the proposed Sale. A copy of the Motion, the Bidding Procedures Order and the Bidding Procedures can be obtained from counsel to the Debtors, Stevenson & Bullock, P.L.C., Attn: Elliot Crowder, 26100 American Drive, Suite 500, Southfield, MI 48034 (ecrowder@sbplclaw.com) and Robert N. Bassel, P.O. Box T, Clinton Township, MI 49236 (bbassel@gmail.com).

3.    A hearing to approve the Sale (the "Sale Hearing"), including the assumption and assignment of certain Purchased Contracts, will be held on **  at 11:00 AM (Eastern Time)**, at the United States Bankruptcy Court for the Eastern District of Michigan, 211 W. Fort St., Detroit, Michigan 48226, before the Honorable Paul R. Hage. The Sale Hearing may be adjourned by the Debtor, after consulting with the Consultation Parties, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of the Debtors' chapter 11 bankruptcy cases.

4.    Pursuant to the Motion, the Debtor may assume and assign the contract(s) and lease(s) identified on **Exhibit A** (the "Subject Contract(s)") to the Successful Bidder at the Auction.[3] The cure amount (the "Cure Amount"), if any, the Debtor believes is required to satisfy all amounts and obligations due and owing under each Subject Contract by the Debtor, including any monetary defaults and compensation for pecuniary losses, is listed on **Exhibit A** (the "Cure Schedule").

5.    The deadline to file an objection to the assumption and assignment of the Subject Contract(s) and the Cure Amount(s) for such Subject Contract(s) (together, "Cure Objections") is **January 23, 2026** (the "Cure Objection Deadline"). Cure Objections, if any, must be filed with the Clerk of the Bankruptcy Court and served on (a) counsel to the Debtors, Stevenson & Bullock, PLC, Attn: Elliot Crowder, 26100 American Drive, Suite 500, Southfield, MI 48034 and Robert N. Bassel, P.O. Box T, Clinton Township, MI 49236; (b) counsel to SummitBridge National Investments VIII LLC, Frost Brown Todd LLP, Attention: Ronald E. Gold,

---

[3] The Debtor may modify the list of contracts and leases that will be assumed and assigned in connection with the Sale. In addition, the inclusion of any contract or agreement on **Exhibit A** to the Cure Notice shall not constitute an admission by the Debtor that any such contract is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code and the Debtor reserves all rights with respect thereto.

3300 Great American Tower, 301 East 4th Street, Cincinnati, Ohio 45202, (c) counsel to Farm Credit Leasing Services Corporation, Warner Norcross + Judd LP, Attn: Elisabeth M. Von Eitzen, 180 E Water Street, Ste. 7000, Kalamazoo, MI 49007, and (d) counsel to Farm Credit Mid-America, Dentons, Attn: James R. Irving, 101 South Fifth Street, Louisville, KY 40202 ("Consultation Parties").

6.      Any Cure Objection must state (i) the basis for the objection and (ii) with specificity, what Cure Amount(s) the party to the Subject Contract(s) believes is required (in all cases with appropriate documentation in support thereof).

7.      Any objection solely to the Cure Amount(s) may not prevent or delay the Debtors' assumption and assignment of the Subject Contract(s).  If a non-Debtor counterparty (a "Non-Debtor Counterparty") objects solely to Cure Amount(s), the Debtors may, with the consent of the Successful Bidder, hold the claimed Cure Amount(s) in reserve pending further order of the Court or mutual agreement of the parties.  So long as Cure Amount(s) are held in reserve, and there are no other unresolved objections to assumption and assignment of the applicable Subject Contract(s), the Debtors can, without further delay, assume and assign such Subject Contract(s) to the applicable Successful Bidder.  Under such circumstances, the objecting Non-Debtor Counterparty's recourse is limited to the funds held in reserve.

8.      Any objections to the adequate assurance of future performance by the Buyer and/or another Successful Bidder under the applicable Subject Contract(s) must be filed with the Court and served on the Consultation Parties and the applicable Successful Bidder so that such objection is received on or before February 26, 2026 (the "Adequate Assurance Objection Deadline").

9.      Unless a Cure Objection or an objection to adequate assurance of future performance, as applicable, is filed and served by a Non-Debtor Counterparty to any Subject Contract by the Cure Objection Deadline or the Adequate Assurance Objection Deadline, as applicable, such Non-Debtor Counterparty shall be: (i) deemed to have waived and released any right to assert a Cure Objection and to have otherwise consented to the assignment of such Subject Contract, (ii) forever barred from objecting to the assumption and assignment of such Subject Contract or the failure of the Successful Bidder to provide adequate assurance of future performance, and (iii) forever barred and estopped from asserting or claiming any Cure Amount, other than the Cure Amount listed on the Cure Schedule.

3

10.     The hearings with respect to Cure Objection(s) or objection(s) to the adequate assurance of future performance may be held (a) at the Sale Hearing, or (b) at such other date as the Court may designate.

11.     Copies of the Motion, the Bidding Procedures Order, the Bidding Procedures, and the form APA, are available from counsel to the Debtors, Stevenson & Bullock, P.L.C., Attn: Elliot Crowder, 26100 American Drive, Suite 500, Southfield, MI 48034 (ecrowder@sbplclaw.com) and Robert N. Bassel, P.O. Box T, Clinton Township, MI 49236 (bbassel@gmail.com).

Dated: December **, 2025

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Charles D. Bullock
Charles D. Bullock (P55550)
Elliot G. Crowder (P76137)
Ernest M. Hassan, III (P67815)
*Counsel for Luca Mariano Distillery, LLC*
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: cbullock@sbplclaw.com
Email: ecrowder@sbplclaw.com
Email: ehassan@sbplclaw.com

&

By: /s/ Robert N. Bassel
Robert N. Bassel (P48420)
*Counsel for LMD Holdings, LLC*
P.O. Box T
Clinton Township, MI 49236
Phone: (248) 677-1234
Email: bbassel@gmail.com

4

**Exhibit A to Cure Notice**

**CURE SCHEDULE**

| Description of Subject Contract | Name and Contact Information of Counterparty | Cure Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**EXHIBIT 7**
**SALE ORDER**

In re:

LMD Holdings, LLC, *et ano*.,[1]

      Debtors.

Case No. 25-47214
Chapter 11
Hon. Paul R. Hage

(Jointly Administered)

**ORDER (I) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; AND (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) CERTAIN RELATED RELIEF**

Upon the Motion of LMD Holdings, LLC and Luca Mariano Distillery, LLC (collectively, the "Debtors"), pursuant to sections 105, 363, 365 and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, 6004, 6006, 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 6004-1 and 9014-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Michigan (each a "Local Rule," and, collectively, the "Local Rules") for, among other things, entry of an order authorizing and approving (I) the sale of substantially all of the Debtors' assets (the "Assets") free and clear of liens, claims, and encumbrances, and (II) the assumption

---

[1] The Debtors in these jointly administered proceedings are LMD Holdings, LLC (Case No. 25-47214) and Luca Mariano Distillery, LLC (Case No. 25-51472).

and assignment of executory contracts and unexpired leases (the "<u>Motion</u>");[2] and the

Court having taking into consideration the *Order (I) Establishing Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially All of Debtors' Assets, (III) Setting Certain Dates and Deadlines in Connection Therewith, (IV) Approving the Form of the Asset Purchase Agreement, Including the Stalking Horse Bid Protections, and (V) Granting Related Relief* [Doc. No. __] (the "<u>Bidding Procedures Order</u>"); [and the Debtors having conducted an auction on \*\*\* (the "<u>Auction</u>") in accordance with the Bidding Procedures Order]; _____ ("<u>Buyer</u>") having submitted the highest and best Qualified Bid (as that term is defined in the Bidding Procedures Order) for the Assets and having been chosen by the Debtors as the Successful Bidder (as that term is defined in the Bidding Procedures Order) upon the conclusion of the Auction; and the Court having conducted a hearing on the Sale Motion on \*\*\* (the "<u>Sale Hearing</u>"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered: (i) the Motion and the exhibits thereto, (ii) the Asset Purchase Agreement, substantially in the form attached as **Exhibit 2** to the Motion by and among Buyer and the Debtors

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion, the Bidding Procedures or the Bidding Procedures Order, as applicable.

("APA"), whereby the Debtors have agreed, among other things, to sell the Assets to Buyer (the "Sale") and to assume and assign to Buyer certain executory contracts and unexpired leases (collectively, the "Purchased Contracts") in connection with the Sale; and it appearing that due notice of the Motion, the Bidding Procedures Order, and the form of order proposed by the Debtors to be entered granting the Motion has been provided in accordance with the Bidding Procedures Order; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their estates, and upon the full record of this bankruptcy case, the Sale Hearing and all filings and other hearings in this case; and after due deliberation thereon; and good cause appearing therefore;

**THE COURT HEREBY FINDS THAT:[3]**

A.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Motion are sections 105(a), 363, 365 and 503 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, 9007 and 9014.

---

[3] In accordance with Bankruptcy Rule 7052, when appropriate, all findings of fact shall be construed as conclusions of law, and all conclusions of law shall be construed as findings of fact.

C.	This Court entered its Bidding Procedures Order which, among other things: (i) established the bidding procedures (the "Bidding Procedures") for the sale of the Assets at public auction; (ii) set the Sale Hearing date; and (iii) approved the form of notice regarding same.

D.	The Bidding Procedures provided a full, fair, and reasonable opportunity for any interested party to make an offer to purchase the Assets. [The Debtors received __ bids, and the Buyer's bid was designated as the Successful Bid pursuant to the Bidding Procedures Order].

E.	Notice of the Motion, the Bidding Procedures Order and the Sale Hearing was served upon: (a) all entities known to have expressed a *bona fide* interest in purchasing any of the Assets and such other parties identified by the Consultation Parties prior to the date hereof; (b) the Consultation Parties; (c) all entities known to have asserted any lien, claim, or encumbrance in or upon any of the Assets; (d) all federal, state, and local environmental, regulatory, or taxing authorities or recording offices that have a reasonably known interest in the relief requested by the Motion; (e) the Office of the United States Trustee; (f) the Securities and Exchange Commission; (g) the U.S. Environmental Protection Agency; (h) the U.S. Attorney for the Eastern District of Michigan; and (i) all persons and entities that have filed a request for service of filings in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

F.     Under the circumstances of thesechapter 11 cases, the notice of the Motion and the Sale Hearing as described above was proper, timely, adequate, and sufficient, and was provided in accordance with all applicable laws including, but not limited to, section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, in compliance with the Bidding Procedures Order and the Local Rules, and was reasonably calculated to reach and apprise all holders of liens, claims, encumbrances, and interests, and no other or further notice of the Motion and Sale Hearing or any matters in connection therewith is or shall be required.

G.     A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all parties in interest.

H.     As evidenced by the Motion, the testimony and other evidence proffered or adduced at the Sale Hearing, and the representations of counsel made on the record at the Sale Hearing, and in light of the circumstances of these chapter 11 cases: (i) the Debtors have adequately marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order; (ii) interested parties have been given a reasonable opportunity to make a higher or better offer for the Assets; (iii) the consideration provided for in the APA constitutes the highest and best offer for the Assets and provides fair and reasonable consideration for the Assets; (iv) prompt approval of the Sale is the best means to preserve and maximize the value of the Debtors' assets; (v) the Sale maximizes the fair value for parties in

5

interest; (vi) the Debtors are receiving reasonably equivalent value for the Assets; and (vii) the Debtors' determination that the APA constitutes the highest and best offer for the Assets and that the Sale represents a better alternative for the Debtors' estates than an immediate liquidation constitutes valid and sound exercises of the Debtors' business judgment.

I.      The sale [and auction] process and sale was non-collusive, fair and reasonable, conducted in good faith and at arm's length. Neither the Debtors nor the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code, or that would cause or permit the APA and the Sale to be avoided under section 363(n) of the Bankruptcy Code. The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, the Buyer is entitled to all the protections afforded thereby. In the absence of a stay pending any appeal of this Order, Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale pursuant to the APA at any time after entry of this Order. Any reversal or modification on appeal of the authorization provided in this Order to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of any executory contracts), unless such authorization is duly stayed pending such appeal.

J.      Approval of the APA and consummation of the Sale at this time is in the best interests of the Debtors and their estates.

6

K.      The Debtors: (i) have full power and authority to execute the APA and all other documents contemplated thereby, and the sale of the Assets has been duly and validly authorized by all necessary action of the Debtors; (ii) has all the power and authority necessary to consummate the Sale pursuant to the APA; and (iii) has taken all action necessary to authorize and approve the APA and the Sale.

L.      The transfer of the Assets to the Buyer pursuant to the APA will be a legal, valid, and effective transfer of the Assets and will vest the Buyer with all right, title, and interest of the Debtors to the Assets free and clear of liens, claims, encumbrances, and interests (other than Assumed Liabilities), including rights or claims based upon any successor or transferee liability.

M.      The Debtors may sell the Assets free and clear of all liens, claims, encumbrances, and interests of any kind or nature whatsoever (other than Assumed Liabilities), including rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

N.      The Buyer shall have no liability for any obligation of, or claim against, the Debtors or their bankruptcy estates related or unrelated to the Assets by reason of the transfer of the Assets to the Buyer.

O.      Unless otherwise expressly included in Permitted Encumbrances under the APA, the Buyer shall not be responsible for any Liens or Interests, including in

respect of the following: (1) any labor or employment agreements; (2) all mortgages, deeds of trust and security interests; (3) intercompany loans and receivables between the Debtors and any non-Debtor affiliate, (4) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors; (5) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (1) any other state or federal benefits or claims relating to any employment with the Debtors or any of their respective predecessors; (6) Claims or Interests arising under any Environmental Laws with respect to any assets owned or operated by Debtors or any corporate predecessor at any time prior to the Closing Date; (7) any liabilities of the Debtors other than the Assumed Liabilities; (8) as defined in the APA, the

8

"Excluded Liabilities"; (9) any bulk sales or similar law; (10) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (11) any theories of successor liability. The Buyer shall not be deemed, as a result of any action taken in connection with the Sale and the purchase of the Assets or otherwise, to be a successor to the Debtors because, among other reasons: (i) the Buyer is not expressly or impliedly agreeing to assume any of the Debtors' liabilities (other than Assumed Liabilities); (ii) the Sale does not amount to a consolidation, merger, or *de facto* merger of the Debtors and the Buyer; (iii) the Buyer is not merely a continuation of the Debtors; and (iv) the Sale is not being entered into fraudulently or in order to escape liability from the Debtors' debts.

P.      The Buyer would not have entered into the APA and would not consummate the Sale without the findings contained in this Order and if: (i) the sale of the Assets was not free and clear of all liens, claims, encumbrances, and interests (other than Assumed Liabilities), including rights or claims based upon any successor or transferee liability; or (ii) the Buyer would, or in the future could, be liable for any liabilities other than the Assumed Liabilities.

Q.      The Debtors have demonstrated that it is in the exercise of their sound business judgment to assume and assign the Purchased Contracts to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Purchased Contracts is in the best interests of the Debtors and their estates.

The Purchased Contracts being assigned to, and the liabilities being assumed by, the Buyer are an integral part of the Assets being purchased by the Buyer and, accordingly, such assumption and assignment of the Purchased Contracts and liabilities is reasonable, maximizes the value of the Debtors' estates, and does not constitute unfair discrimination.

R.      The Debtors have: (i) cured and/or provided adequate assurance of cure of any default requiring cure existing prior to the date hereof under any of the Purchased Contracts that have been designated by the Buyer for assumption and assignment under the APA, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Purchased Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

S.      Adequate assurance of future performance under the Purchased Contracts has been provided within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

T.      The Assumption and Assignment Procedures are fair, appropriate, and effective and, upon payment of all cure amounts and approval of the assumption and assignment for a particular Purchased Contract thereunder, the Debtors shall be forever released (except as otherwise provided (i) herein, (ii) in the APA, (iii) in the

Motion, or (iv) any order of this Court) from any and all liability under the Purchased Contracts.

U.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Consistent with Bankruptcy Rules 6004(h) and 6006(d), there is no just reason for delay in the implementation of this Order, there shall be no stay as would otherwise exist under Bankruptcy Rule 6004(h), and this Order shall become effective immediately upon entry.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**I.      Approval of Sale**

1.      All objections to the Motion or the relief requested therein that pertain to the Motion or the APA that have not been withdrawn, waived or settled are hereby overruled on the merits for the reasons set forth on the record at the Sale Hearing and as set forth herein. Those parties in interest that did not object, or who withdrew their objections, are deemed to have consented to the entry of this Order pursuant to section 363(f)(2) of the Bankruptcy Code.

2.      Notice of the Motion and Sale Hearing was proper, timely, adequate, and sufficient, and complied in all respects with the Bidding Procedures Order, the Bankruptcy Rules and the Local Rules.

11

3. The APA and all terms and conditions thereof (subject to any modifications contained herein) are approved in all respects. If there is any conflict between the APA and this Order, this Order shall control.

4. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to perform its obligations under, and comply with the terms of, the APA and consummate the Sale.

5. The Debtors, the Buyer, and their respective representatives are authorized to execute and deliver, and empowered to perform under, consummate, and implement the APA, together with all additional instruments and documents that the Debtors or Buyer deem necessary or appropriate to implement the APA and effectuate the Sale, and to take all further actions as may reasonably be required by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession the Assets or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA. All previous actions taken by the Debtors and their representatives in connection with the APA and the Sale are deemed approved.

6. This Order and the APA shall be binding in all respects upon: (i) the Debtors; (ii) their affiliates; (iii) all known and unknown creditors of, and holders of equity security interests in, the Debtors, including any holders of liens, claims, encumbrances, or interests; (iv) all non-debtor parties to the Purchased Contracts;

12

(v) the Buyer and its successors and assigns; (vi) all interested parties, their successors and assigns, and (vii) any trustees appointed in the Debtors' chapter 11 cases or upon the conversion of the case to a case under chapter 7 of the Bankruptcy Code, and shall not be subject to rejection.

7.      Except as set forth in the APA, the sale of the Assets is "as is," "where is," and "with all faults." The Debtors do not warrant quality of the title or warrant the condition of the Assets, except as otherwise specifically set forth in the APA.

**II.      Transfer of Assets Free and Clear**

8.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors may transfer the Assets to the Buyer in accordance with the APA and, upon closing, the Assets shall be free and clear of all liens, claims, encumbrances, and interests of any kind or nature whatsoever (other than Assumed Liabilities), including rights or claims based upon successor or transferee liability, and all such liens, claims, encumbrances, and interests, including rights or claims shall attach to the net proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they now have as against the Assets, subject to any claims and defenses the Debtors or any other party in interest may possess with respect thereto.

9.      Except for the Assumed Liabilities, or as otherwise expressly provided for in this Order or the Purchase Agreement, the Buyer shall not have any liability or other obligation of the Debtors arising under or related to any of the Assets.

13

Without limiting the generality of the foregoing, the Buyer shall not be liable for any Claims or Interests against the Debtors or any of their predecessors or affiliates, other than the Assumed Liabilities, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between the Debtor and any non-Debtor affiliate, liabilities relating to or arising from any Environmental Laws, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the Closing. Neither the purchase of the Assets by the Buyer nor the fact that the Buyer is using any of the Assets previously operated by the Debtors will cause the Buyer to be deemed a successor in any respect to the Debtors' businesses or incur any liability derived therefrom within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or

14

under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine.

10. Except with respect to Assumed Liabilities, all persons and entities, including, but not limited to, all debt security holders, equity security holders, unions, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens or Interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Assets to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer, any of its affiliates, its successors or assigns, their property or the Assets, such persons' or entities' Liens or Interests in and to the Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, any of its affiliates, its successors, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, any of its affiliates, its successors, assets or properties; (iii) creating, perfecting, or enforcing any Lien or other Claim against the Buyer, any of its affiliates, its successors, assets,

15

or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyer, any of its affiliates or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets or (vii) any action seeking to hold the Buyer liable as a successor under any collective bargaining agreement of the Debtors. On the Closing Date, or as soon as possible thereafter, each creditor is authorized and directed, and the Buyer is hereby authorized, on behalf of each of the Debtors' creditors, to execute such documents and take all other actions as may be necessary to release Liens or Interests in or on the Assets (except Assumed Liabilities), if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

11.     Except to the extent expressly included in the Assumed Liabilities, or by applicable law or statue, the Buyer and its affiliates shall have no liability, obligation or responsibility under the WARN Act (29 U.S.C. §§ 210 et seq.), CERCLA or any foreign, federal, state or local labor, employment or Environmental Law by virtue of the Buyer's purchase of the Assets or assumption of the Assumed Liabilities.

16

12.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Assets to the Buyer in accordance with the terms of the Purchase Agreement and this Order.

13.     The Buyer has given substantial consideration under the Purchase Agreement for the benefit of the Debtors, their estates, and creditors. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Order, which releases shall be deemed to have been given in favor of the Buyer by all holders of Liens against or interests in, or Claims against the Debtors or any of the Assets, other than holders of Liens or Claims relating to the Assumed Liabilities. As a good faith Buyer of the Assets, the Buyer has not entered into an agreement relating to the bidding or acquisition of the Assets with any other potential bidders at the Auction, and has not colluded with any other bidders, potential bidders, or any other parties interested in the Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer. The consideration provided by the Buyer for the Assets under the Purchase Agreement is fair and reasonable and accordingly the purchase may not be avoided under section 363(n) of the Bankruptcy Code

14.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with any recorder to evidence the cancellation of the liens, claims, encumbrances (other than Assumed Liabilities), or interests in the Assets.

15.     The transfer of the Assets to the Buyer pursuant to the APA constitutes a legal, valid, and effective transfer of the Assets and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Assets free and clear of all liens, claims, encumbrances, and interests of any kind or nature whatsoever (other than Assumed Liabilities), including rights or claims based upon any successor or transferee liability, other than the Assumed Liabilities. The subsequent dismissal of this case shall not affect the transfer of the Assets to the Buyer, nor shall any such dismissal cause the Assets to re-vest in the Debtors.

16.     On the closing of the Sale, all liens, claims, encumbrances, or interests (other than Assumed Liabilities) against the Assets shall, without the necessity of further action on the part of the Buyer, Debtors, or any creditor, be deemed released and discharged, and shall attach to the proceeds of sale, in the order of their priority, with the same validity, force, and effect which they now have as against the Assets. On the closing of the Sale, each of the Debtors' creditors and any other holder of a lien, claim, encumbrance, or interest (other than Assumed Liabilities), is authorized and directed to execute such documents and take all other actions as may be necessary to release its lien, claim, encumbrance, or interest (other than Assumed

18

Liabilities) in the Assets, if any, as such lien, claim, encumbrance, or interest may have been recorded or may otherwise exist.

17. If any person has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing a lien, claim, encumbrance, or interest in the Assets (other than Assumed Liabilities) and has not delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, release of all liens, claims, encumbrances, or interests, which the person has with respect to the Assets or otherwise, then: (i) the Debtors are authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person with respect to the Assets; and (ii) the Buyer is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and interests of any kind or nature whatsoever in the Assets.

### III. Assumption and Assignment of Purchased Contracts

18. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code and subject to and conditioned upon (i) the closing of the Sale, and (ii) the resolution of any relevant objections other than a Cure Objection (an "Objection"), and by order of this Court overruling such objection or upon agreement of the parties, the Debtors' assumption and assignment to the Buyer of each Purchased Contract is approved,

19

and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.

19. The Debtors are authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to: (i) execute and deliver to the Buyer such documents or other instruments as the Buyer reasonably deems may be necessary to assign and transfer the Purchased Contracts to the Buyer, and (ii) Promptly Pay (as defined below) the identified Cure Amount with respect to each Purchased Contract. For the avoidance of doubt, all of the Debtors' rights to assert credits, chargebacks, setoffs, rebates, and other claims under the Purchased Contracts are purchased by and assigned to the Buyer as of the closing of the Sale. As used herein, "Promptly Pay" means: (i) with respect to any Cure Amount (or portion thereof, if any) which is undisputed, payment as soon as reasonably practicable, but not later than five (5) business days after the closing of the Sale; and (ii) with respect to any Cure Amount (or portion thereof, if any) which is disputed, payment as soon as reasonably practicable, but not later than five (5) business days after such dispute is resolved or such later date upon agreement of the parties and, in the event bankruptcy court approval is required, upon entry of a final order of the Bankruptcy Court. On and after the closing of the Sale, the Buyer shall: (i) perform any nonmonetary defaults that are required under section 365(b) of the Bankruptcy Code; and (ii) pay all

20

undisputed, unpaid obligations and perform all obligations that arise or come due under each Purchased Contract in the ordinary course on and after the Closing Date.

20. The Purchased Contracts shall be transferred and assigned pursuant to the Bidding Procedures Order, the APA and this Order and, thereafter, remain in full force and effect for the benefit of the Buyer, notwithstanding any provision in any such Purchased Contract (including those of the type described in sections 365(b)(2), (e)(1), and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Purchased Contracts after such assumption and assignment to the Buyer.

21. Except as may be contested in an Objection, each Purchased Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code and the Debtors may assume each of the respective Purchased Contracts in accordance with section 365 of the Bankruptcy Code.

22. Except as may be contested in an Objection, the Debtors may assign each Purchased Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Purchased Contract that prohibit or condition the assignment of such Purchased Contract or terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the

21

assignment of such Purchased Contract, constitute unenforceable anti-assignment provisions which are void.

23. At such time as provided in the Bidding Procedures Order and the APA, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all rights, title, and interests of each Purchased Contract. With respect to leases of personal property that are true leases and not subject to recharacterization, nothing in this Order shall transfer to the Buyer an ownership interest in any leased property not owned by the Debtors.

24. Except in connection with any ongoing Objection, each non-debtor party to a Purchased Contract is forever barred, estopped, and permanently enjoined from: (i) asserting against the Debtors or Buyer, their successors or assigns, or their respective property, any default arising prior to, or existing as of, the date that this case was commenced, or, against the Buyer, any counterclaim, defense, or setoff (other than defenses interposed in connection with, or related to, credits, chargebacks, setoffs, rebates, and other claims asserted by the Debtors or the Buyer in its capacity as assignee), or other claim asserted or assertable against the Debtors; and (ii) imposing or charging against the Debtors, Buyer, or their affiliates, any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to the Buyer of the Purchased Contracts.

25. The failure of the Debtors or Buyer to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Purchased Contracts.

26. The authority hereunder for the Debtors to assume and assign a Purchased Contract to the Buyer includes the authority to assume and assign a Purchased Contract, as amended.

27. The assignment of each of the Purchased Contracts is made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

**IV.    Additional Provisions**

28. The consideration provided by the Buyer for the Assets under the APA is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

29. The Sale is undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and was negotiated by the parties at arm's length, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of any of the Purchased Contracts), unless such authorization is duly stayed pending such appeal. In the event of any stay, modification, reversal or

23

vacation of this Order, then notwithstanding any such stay, modification, reversal or vacation, all obligations incurred by the Debtors under this Order and the Purchase Agreement prior to the effective date of such stay, modification, reversal or vacation will be governed in all respects by the original provisions of this Order, and Buyer shall be entitled to the rights, privileges and benefits granted in this Order with respect to all such obligations.

30. Subject to further Court order and consistent with the terms of the APA, the Debtors and the Buyer are authorized to, and shall, take appropriate measures to maintain and preserve, until the consummation of any chapter 11 plan, the following: (i) the books, records, and any other documentation relating to the Debtors' business; and (ii) the cash management system maintained by the Debtors prior to the Closing, as such system may be necessary to effect the orderly administration of the Debtors' estates.

31. No law of any state or other jurisdiction relating to bulk sales laws, or similar laws, shall apply in any way to the transactions pursuant to the Sale, the APA, the Motion, and this Order.

32. Each and every federal and local governmental agency, department or official is hereby directed to accept any and all documents and instruments necessary to consummate the transactions contemplated by the APA.

24

33. The failure to specifically include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety, except as modified herein.

34. The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or on any non-consenting party in interest. Any such proposed modification, amendment, or supplement that does have a material adverse effect on the Debtors' estates or on any non-consenting party in interest shall be subject to further order of the Court, on appropriate notice.

35. This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, in all respects, including but not limited to, retaining jurisdiction to: (i) compel delivery of the Assets to the Buyer; (ii) compel performance of other obligations owed by or to the Debtors, including payment of the Purchase Price; (iii) resolve any disputes arising out of or related to the APA; and (iv) interpret, implement, and enforce the provisions of this Order.

36. Notwithstanding the provisions of Bankruptcy Rules 6004 and 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is hereby expressly waived and shall not apply. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the closing, or risk its appeal will be foreclosed as moot.